Thomas W. PORTER et al., Appellants,

v.

SOUTHWESTERN PUBLIC SERVICE COMPANY, Appellee.

No. 8325.

Court of Civil Appeals of Texas, Amarillo.

Dec. 29, 1972.

Rehearing Denied Jan. 22, 1973.

Herbert C. Martin, Amarillo, for appellants.

Stone, Stone & Chambers (Ben H. Stone, Jr.), Amarillo, for appellee.

REYNOLDS, Justice.

The presented issue is whether on abstract principle a public utility's power of eminent domain is superior to the zoning ordinance of a home-rule city. We hold that it is not, and this determination requires a reversal of the trial court's judgment of dismissal.

Appellee Southwestern Public Service Company, hereinafter referred to as SPS, was granted a building permit by the City of Amarillo, a home-rule city. SPS purchased a tract of land in an area of the city zoned for single family dwellings, and started construction of an electrical substation thereon. When the construction was approximately 95% completed, the city informed SPS that the permit had been erro-

neously issued, and that it would be necessary that a special use permit be secured before construction could proceed. SPS applied for the special use permit. Following a hearing before the planning and zoning commission, that body by a four to one vote with one abstention recommended to the city commission that a non-conforming use permit be granted. Four of the five city commissioners were present to act on the recommendation by means of a proposed ordinance authorizing the issuance of the special use permit. The motion for passage of the ordinance produced a two to two vote, and a motion to deny passage of the ordinance produced an identical vote. The city then notified SPS that since the vote failed to carry, SPS would be required to remove the substation in 180 days or proceed to court. Some 70 days later the city advised SPS that its prior notification was in error since its city attorney had discovered that SPS was not subject to the zoning ordinance, and that SPS has the right to use the site for a substation. SPS then completed its construction and placed the substation in operation.

Thereafter the appellants, three married couples owning and occupying residences in the residential zoned area, filed this suit. Appellants sought a mandatory injunction requiring SPS to move the substation for violation of the zoning ordinance and as a public and private nuisance or, alternatively, damages. SPS levelled special exceptions to the petition. Those special exceptions predicated on the zoning ordinance being invalid and unenforceable as to SPS under its right of eminent domain were sustained. All other special exceptions were overruled. Appellants refused to amend their petition, and the trial court entered its judgment of dismissal.

Appellants present six points of error. Three of these assign as error the effective holding of the trial court that the city's zoning ordinance is in conflict with, and invalid and unenforceable with respect

to, SPS's right of eminent domain. These points of error are sustained. The other three points attempt to assign as error purported rulings made by the trial court respecting appellants' petition which, in fact, were not made in the court's order, and these points will not be further considered.

Basically, aside from various collateral contentions, appellants premise their appeal on the proposition that the zoning ordinance, enacted by authority of arts. 1011a through 1011j,[1] is superior to whatever right of eminent domain SPS may have. It is SPS's position that the right of eminent domain granted it by art. 1436, coupled with its corporate rights under art. 1435, is superior and not subservient to the city's zoning ordinance. Thus, there is the confrontation of adverse claims, each asserting the superior right.

Eminent domain involves the deprivation of the right of the property owner to keep his property when it is needed for public use. Zoning regulations, derived from the police powers, deprive the property owner of the use of his property contrary to standards promulgated for the health, safety and welfare of the public generally. Both powers are inherent in state government and may be delegated for appropriate purposes. Neither power is an unbridled one; in short, there must not be an abuse of the power. See Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475 (1934).

Although appellants dispute SPS's right of eminent domain, art. 1436 clearly grants that general power to electric current and power corporations such as SPS. This general grant of eminent domain power does not expressly bestow the right to select the precise location; however, the power normally carries with it the right to select the location and extent of property to be taken so long as there is no abuse of that power.

---

1. All cited articles are referenced to Vernon's Annotated Texas Civil Statutes.

The building and zoning laws of the state are expressed in arts. 1011a through 1011j as a part of the statutory scheme for discharging the state's responsibilities under its police powers. Amarillo is a home-rule city delegated building and zoning powers by art. 1175, subd. 26. A limited extraction from the city's code of ordinances was filed as an exhibit in the trial court and brought forward on appeal. It indicates an established, comprehensive zoning and building scheme throughout the city to promote and protect the public health, safety, convenience and general welfare. A planning and zoning commission is created to hold hearings on applications for uses not conforming to the established scheme and to make recommendations thereon to the city commission. The city commission may approve or disapprove the recommendation and, if approved, may impose certain standards to be met in the interest of the public welfare.

To substantiate the respective theory of each litigant, resort is made to various cited cases concerned with one aspect or another of the eminent domain and police powers; but SPS submits that only two cases in Texas have considered the exact question presented here, and contends that both of them establish the superiority of the power of eminent domain over the power of police regulations through zoning ordinances. Those two cases are Fort Worth & D. C. Ry. Co. v. Ammons, 215 S.W.2d 407 (Tex.Civ.App.—Amarillo 1948, writ ref'd n. r. e.) and Gulf, C. & S. F. Ry. Co. v. White, 281 S.W.2d 441 (Tex. Civ.App.—Dallas 1955, writ ref'd n. r. e.). We do not agree that those two cases, nor the decision reached there that the zoning ordinance must yield, is dispositive of the issue as presented here.

*Ammons* and *White* both concerned a proposed spur extension of the railroad across a residential zoned area. In *Ammons,* the railway company did not apply for either an exception to the zoning ordinance or a building permit; in *White,* the company applied for and was granted a permit, the issuance of which was challenged as an abuse of discretion. In both instances, the company owned the land over which the extension was to be made long before the building and zoning regulations were enacted. A full hearing was held in each case. *Ammons* expressly stated, and *White* implied, that there was no other right-of-way to serve the public needs. The state's sovereign interest expressed in legislation gave the railway company the eminent domain power, in the absence of abuse, to select its site and, as found in *Ammons,* and adopted in *White,* "(t)here is no evidence that the appellants [railway company] abused the power given them." Nevertheless, *Ammons* required the railway company to comply with the city's building code. *White* relied on *Ammons* and, as in the precedential case, reached its decision "under the facts presented." Although both cases gave preference to the power of eminent domain over the zoning ordinance under the facts in each case, neither case expressed the opinion that as an abstract principle the right of eminent domain is superior to the police powers represented by zoning regulations.

Here, the building and zoning ordinances were enacted, and SPS was charged with notice thereof, before SPS purchased the land in the residential zoned area. When the matter was before it, the city did not enact the ordinance granting an exception to the zoning ordinance. There has not been raised in this proceeding any question as to the validity of the ordinance as being a proper exercise of the police power delegated to the city, or any contention that the action taken pursuant thereto is unreasonable, arbitrary or capricious. SPS has not requested, and there has not been, a full hearing establishing the predicate facts necessary to determine either the validity of the ordinance or, if it be valid, whether the city's refusal to authorize the special use permit was an abuse of discretion.

■ Building and zoning ordinances are a valid exercise of police powers and

may be invoked to abridge property rights, even to the extent of excluding business buildings from a residential district, when the public health, safety, comfort or welfare would be endangered by the free exercise of those property rights. Lombardo v. City of Dallas, supra. It is undisputed that there has been no compliance with the zoning ordinance or an exception secured from its operation. The right of eminent domain advanced here is one derived from a general grant and does not exempt SPS from the zoning authority. The city, to which the state has specifically entrusted the police powers, has the power to inquire into the reasonableness of the manner by which eminent domain is to be exercised within its corporate limits. Its planning ordinances are presumed to be valid until the contrary is shown, and one seeking an exception has the burden of proof.

Absent a sustained challenge, the city, in discharging the delegated police powers, does not usurp the eminent domain authority of SPS by requiring it to meet certain standards any more than it usurps the control and management of individuals over their property and affairs by making them meet the same standards. Otherwise, to paraphrase the language used by our Supreme Court in Port Arthur Independent Sch. Dist. v. City of Groves, 376 S.W. 2d 330 (Tex.Sup.1964), in decreeing that school buildings are subject to the reasonable ordinances of the city, to hold differently would be to leave a hiatus in regulations necessary to the health, safety and general welfare of the community; if the city cannot require certain standards, there could be only SPS itself to determine such standards. The substation could be built so as to be inconsistent with the city's scheme of regulation and inconsiderate of the city's peculiar problems of health, safety and welfare. These matters are precisely alleged in appellants' petition for relief.

The judgment of dismissal entered by the trial court is reversed and the cause is remanded for reinstatement on the trial docket.