**HOUSTON LIGHTING & POWER COMPANY, Appellant,**

v.

**KLEIN INDEPENDENT SCHOOL DISTRICT, Appellee.**

No. B14–86–002–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 5, 1987.

Rehearing Denied Dec. 17, 1987.

See also 720 S.W.2d 87.

Walter E. Workman, Houston, for appellant.

H. Dixon Montague, H. Ronald Welsh, Fred M. Lange, B. Lee Ware, Marie R. Yeates, Ewing Werlein, Jr., Houston, for appellee.

Before PAUL PRESSLER, SEARS and CANNON, JJ.

## OPINION

PAUL PRESSLER, Justice.

Appellee was awarded $104,275 actual damages and $25 million punitive damages as well as a writ of possession and a permanent injunction in a condemnation proceeding. We find error in the $25 million punitive damages award and modify the judgment to delete those damages. We affirm the judgment as modified.

In 1981 HL & P petitioned to condemn a one-hundred-foot-wide strip of land on which to build part of a 79.2–mile 345,000–volt transmission line. Klein owned the affected property, which served as a campus for two schools and a proposed third. Three special commissioners, appointed to determine the value of the property, awarded Klein $78,604 as compensation for the easement. Klein did not participate in the hearing claiming the special commissioners had no jurisdiction to determine the propriety of the "taking."

Following the award, Klein filed with the trial court its objections to the taking of its property and, alternatively, to the award itself. Klein's pleading asserted that HL & P had acted in "an arbitrary and capricious manner" in condemning the property. Meanwhile, HL & P deposited $78,604 in the registry of the court, took possession of the property and constructed the transmission line. The line was energized in 1984.

On November 8, 1985, Klein amended its pleadings alleging that the decision to locate on the Klein property constituted "a callous disregard for the safety, health, and well-being of the 3,000 plus children" attending the schools such as to render its condemnation void. Klein furthermore alleged that HL & P's entry into possession of the property constituted a trespass.

On November 18, 1985, at the commencement of trial, Klein filed an admission of facts pursuant to Tex.R.Civ.P. 266. As a result, the sole issue remaining to be determined was the alleged abuse of discretion which Klein claimed amounted to a bad faith and wanton trespass. The jury found that HL & P had abused its discretion in taking the easement and had erected the transmission line in reckless disregard of the school's use of its property. The jury assessed both actual and exemplary damages in Special Issues Nos. 1 through 4. The jury also found in Special Issues Nos. 5 through 7 that the cost to relocate the school complex would be $42,180,280.

Klein elected to move for judgment on Special Issues Nos. 1 through 4. The trial court granted judgment against HL & P for actual and exemplary damages, ordered a writ of possession restoring the property to Klein, and permanently enjoined HL & P's use of its facilities. HL & P sought by mandamus to supersede the injunction and use the line pending final outcome of the case. This court held that the trial court should permit HL & P to supersede the injunction. *Houston Lighting & Power Co. v. Landry*, 709 S.W.2d 693 (Tex.App.— Houston [14th Dist.] (1986). Klein then filed a petition for writ of mandamus with the supreme court, which granted the petition and thus, in effect, denied the relief sought by HL & P. *Klein Independent School Dist. v. Fourteenth Court of Appeals*, 720 S.W.2d 87 (Tex.1986).

In points of error one through five, HL & P contests the trial court's jurisdiction. At issue in this case is a relatively new scientific concern—the possible health effects or risks associated with exposure to high voltage power lines. A related legal issue concerns the forum that should con-

sider those effects and their impact on the location of the line. In point of error one, HL & P argues that the trial court lacked jurisdiction to review the location and safety of the transmission line as exclusive jurisdiction over such matters is vested in the Texas Public Utility Commission.

In 1975 the legislature enacted the Public Utility Regulatory Act and thereby created the Public Utility Commission (the PUC) to regulate public utilities, which are by definition monopolies in the areas they serve. Tex.Rev.Civ.Stat.Ann. art. 1446c, § 2 (Vernon Supp.1987). Prior to rendering service to the public, a public utility must obtain a certificate from the PUC stating that the present or future public convenience and necessity require or will require such installation, operation or extension. § 50.

A public utility is also subject to the jurisdiction of the courts when acquiring property on which to build its facilities. In Harris County, the county civil courts at law have exclusive jurisdiction of all eminent domain matters, regardless of the amount in controversy, and may determine all issues including those relating to title to real or personal property. Tex.Rev.Civ. Stat.Ann. art. 1970–110g, § 2(a)–(b) (Vernon Supp.1987). As a general rule, the courts will not disturb a condemnor's action in the absence of fraud, bad faith, or gross abuse of discretion. *Webb v. Dameron*, 219 S.W.2d 581, 584 (Tex.Civ.App.— Amarillo 1949, writ ref'd n.r.e.).

HL & P does not dispute the trial court's jurisdiction to determine the issue of abuse of discretion. However, HL & P does object to what it alleges is Klein's attempt to make a complaint about the *unsafe location* of the transmission line under the guise of a determination of abuse of discretion. HL & P recognizes that the PUC has exclusive original jurisdiction to grant certificates of public convenience and necessity. In granting such a certificate, the PUC must follow art. 1446c, § 54(b), which provides that certificates shall issue "only if the commission finds that the certificate is necessary for the service, accommodation, convenience, or *safety of the public.*" HL & P argues that the determination of the

location and safety, under normal operation, of electrical facilities is contained within the grant of a certificate of necessity and, therefore, is within the PUC's exclusive original jurisdiction. HL & P further argues that while approval of a line by the PUC does not destroy the usual jurisdiction of the courts reviewing condemnation matters to determine whether there was an abuse of discretion, it does preclude a subsequent collateral attack on issues that are determined in the administrative process.

Basic to HL & P's argument is its assertion that historically courts have never reviewed a condemnor's determination as to location or safety under the abuse of discretion doctrine but have limited the applicability of that doctrine to two situations: (1) condemnation undertaken for a purpose not authorized by statute, and (2) taking more land than necessary. Several courts, however, have specifically considered the location or selection of a particular piece of property in the context of the issue of abuse of discretion. *Tejas Gas Corp. v. Herrin*, 705 S.W.2d 177, 180 (Tex.App.— Texarkana 1985), *rev'd on other grounds*, 716 S.W.2d 45 (Tex.1986); *Porter v. Southwestern Public Service Co.*, 489 S.W.2d 361, 363 (Tex.Civ.App.—Amarillo 1972, writ ref'd n.r.e.); *Snellen v. Brazoria County*, 224 S.W.2d 305, 310 (Tex.Civ.App.—Galveston 1949, writ ref'd n.r.e.); *Webb*, 219 S.W. 2d at 585.

Thus, issues concerning site selection can be considered before both the PUC and a condemnation court. Safety is one issue where this can occur. The PUC is required to consider the safety of the public although it can not specifically address the interests of each individual landowner whose property is subjected to a "taking." To restrict safety considerations to the PUC is to deprive those landowners of a forum in which to address their concerns.

The PUC procedural rules call for a newspaper notice of a utility's application for certification of a line. PUC Rules of Practice and Procedure § 21.24(c) (1984). As a practical matter, this method of notice will not sufficiently alert landowners of

their right to intervene in the PUC proceedings. Furthermore, there is some question in this case whether the PUC knew that the proposed line crossed a school complex or that health effects issues were involved. HL & P does not contend that the PUC specifically addressed the health effects issue in certifying this transmission line but argues only that the PUC had exclusive jurisdiction of the issue and would have specifically addressed it had Klein submitted it. Klein did not participate in the PUC proceeding. If the PUC is to be the exclusive forum for reviewing the location and safety of a line, there must be mechanisms for insuring that that review indeed takes place, particularly given the ominous implications of recent scientific research.

Neither the statutes nor the case law support HL & P's argument on the jurisdiction issue. The first point of error is overruled.

■ In the second point of error, HL & P argues that appellate review of matters within the exclusive original jurisdiction of the PUC are statutorily consigned to the District Court of Travis County and not the Harris County Civil Courts at Law. Because review of the location and safety of the transmission line is not within the exclusive jurisdiction of the PUC, appeal is not restricted to Travis County. This is not an appeal from a PUC ruling but is an eminent domain matter within the county court at law's jurisdiction. Art. 1970–110g, § 2(a)–(b). The second point of error is overruled.

■ HL & P next questions the trial court's jurisdiction because Klein failed to exhaust its remedies before the PUC, which is a jurisdictional prerequisite to judicial review. HL & P argues that the claim of abuse of discretion is actually an attack on the certificate of necessity. The certificate cannot be attacked without first exhausting the remedies provided by the Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ.Stat.Ann. art. 6252–13a (Vernon Supp.1987). HL & P contends that the failure to exhaust those remedies bars a subsequent attack on all

matters covered by the certificate including the issues of location and safety.

When a cause of action is derived from a statute, the statutory provisions are mandatory and exclusive and must be complied with in all respects or the action is not maintainable for lack of jurisdiction. *Grounds v. Tolar Independent School Dist.*, 707 S.W.2d 889, 891 (Tex.1986). However, the cause of action before us is independent of the statute as it does not attack the certificate of necessity but alleges abuse of discretion in a condemnation proceeding. *See Preston State Bank v. Ainsworth*, 552 F.Supp. 578, 581 (N.D.Tex. 1982). As stated above, the location and safety issues are not excluded from consideration in a condemnation court. The doctrine of exhaustion of remedies is, therefore, inapplicable here. Point of error three is overruled.

■ In point of error four, HL & P contends that the trial court lacked jurisdiction to enter an injunction or award punitive damages because the eminent domain statutes do not expressly provide for either remedy. While the statutes do not so provide, several courts, including this one, have recognized that a county court at law has jurisdiction to grant injunctive relief. *Tejas Gas Corp.*, 705 S.W.2d at 180; *Coastal Industrial Water Authority v. Houston Lighting and Power Co.*, 564 S.W.2d 389, 391 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ). This power is inherent in the court's ability to order a facility removed if it is found that the condemnor lacks the right to condemn. An injunction is a command to refrain from, *or to do*, a particular act. 44 Tex.Jur.3d *Injunctions* § 1 (1985).

■ An award of punitive damages is beyond the scope of remedies allowed in the eminent domain statutes. However, Klein also pleaded a cause of action for trespass which is a claim arising out of the condemnation proceedings. The Harris County civil courts at law, having exclusive jurisdiction of eminent domain matters, may determine all the issues present in each eminent domain case. Art. 1970–110g, § 2(a)–(b). Here trespass was made

an issue. Thus the trial court did have *jurisdiction* both to enter the injunction and to award punitive damages. Point of error four is overruled.

■ HL & P's final jurisdictional argument is that the judgment entered by the county civil court was not supported by the pleadings. Klein's Admission under Rule 266 stated that the admissions "shall serve and are meant to be an amendment to the School District's pleadings on file herein." HL & P argues that this was an amendment under the Texas Rules of Civil Procedure and, therefore, superseded Klein's previous pleadings, and, as the Admission contains no prayer for relief, the relief granted by the trial court has no support in the pleadings and the trial court was without jurisdiction to grant it.

■ A written pleading is to be judged by its substance. Its substance is to be determined by the effect the pleading will have on the proceeding if granted by the trial court. *See* Tex.R.Civ.P. 71; *Austin Neighborhoods Council, Inc. v. Board of Adjustment of Austin,* 644 S.W.2d 560, 565 (Tex.App.—Austin 1982, writ ref'd n.r. e.). The stated purpose of this Admission was to simplify the issues at trial leaving the allegation of abuse of discretion as the sole issue for determination. Presumably, its purpose was also to give Klein the tactical advantage of opening and closing the evidence and argument. Tex.R.Civ.P. 266. Klein clearly did not intend to foreclose any relief to which it might be entitled. This Admission did not have the effect of superseding Klein's earlier prayers for relief. The fifth point of error is overruled.

In points of error six through fifteen, HL & P argues that it did not abuse its discretion in condemning an easement across Klein's property. HL & P's argument has the following three aspects: (1) that the controlling law and the evidence do not support the trial court's submission of, the jury's answer to and the rendition of judgment upon Special Issue No. 1, which concerned abuse of discretion; (2) that Special Issue No. 1 was incorrectly submitted; and (3) that there was no evidence to raise

Special Issue No. 2, which concerned actual damages.

HL & P first contends that a condemnation court's role in reviewing whether the condemnor abused its discretion does not extend to considering the propriety of the location of the condemned land. HL & P then reiterates its claim that a PUC certificate of public convenience and necessity is conclusive of the issues of location and safety. This has been discussed under the first point of error.

■ HL & P attacks Special Issue No. 1 on several grounds. The complaint that the issue was an impermissible comment on the evidence is waived as it is not supported with either argument or authorities. Tex.R.App.P. 131(f); *Brown v. Capital Bank, N.A.,* 703 S.W.2d 231, 234 (Tex.App. —Houston [14th Dist.] 1985, writ ref'd n.r. e.). The complaint that the special issue erroneously stated the law relates to HL & P's contention that location decisions are not reviewable under an abuse of discretion standard and is overruled as set forth above.

■ HL & P further argues that Special Issue No. 1 was confusing and multifarious and unduly emphasized facts not at issue. Special Issue No. 1 read as follows:

Do you find from clear and convincing evidence that Houston Lighting & Power Company has abused its discretion in taking the 8.629 acres, more or less, of the Klein Independent School District's property for an easement for the purpose of erecting, operating, maintaining, and servicing thereon various numbers of wires and all necessary and desirable appurtenances for the supplying, transmission and distribution of electric current and in which it has located for such purposes a 345,000 volt transmission line facility?

HL & P's principal complaint is that the reference to the *purpose* for which the property was condemned placed in issue a fact that Klein had judicially admitted— that HL & P had the power to condemn the property for the aforementioned purpose. HL & P argues that the wording of the special issue required the jury to question

HL & P's purpose in condemning the property.

The language in Special Issue No. 1 tracked the wording of HL & P's condemnation petition, which stated that it was necessary that HL & P take the easement "for the purpose of erecting, operating, maintaining and servicing thereon various numbers of wires and all the necessary or desirable appurtenances thereto ... for the supplying, transmission and distribution of electric current, power and energy to the public." While the issue was perhaps verbose, it merely explained why HL & P had taken the acreage. HL & P's proposed special issue is identical to Special Issue No. 1 as submitted except that it did not include "for the purpose of" and following. The trial court acted within its discretion in submitting the issue as it did.

 HL & P also complains that Special Issue No. 1 did not properly inquire as to the time when HL & P abused its discretion. The instructions to Special Issue No. 1 stated that "arbitrary and capricious action means ... action ... in disregard of the facts and circumstances that existed at the time condemnation was decided upon or within the foreseeable future." HL & P's proposed instructions used exactly the same language, and that language was taken from the definition of "arbitrary and capricious" in the case cited by HL & P in arguing this point. *Wagoner v. City of Arlington,* 345 S.W.2d 759, 763 (Tex.Civ. App.—Fort Worth 1961, writ ref'd n.r.e.). HL & P's complaint is without merit.

 Finally, HL & P finds fault with the instructions in Special Issue No. 1. HL & P argues that since the term "abuse of discretion" was not properly defined, the jury was allowed to equate a mistake in judgment with an abuse of discretion.

Condemnation cases give multiple definitions of abuse of discretion (or arbitrary and capricious conduct as abuse of discretion is frequently characterized). The trial court defined the term as follows:

> With respect to the foregoing issue, you are instructed that "abuse of discretion" means a decision that is arbitrary, capricious, not done according to reason

or judgment, or done without fair, solid, and substantial cause.

> You are instructed that arbitrary and capricious action means willful and unreasoning action, action without consideration, and in disregard of the facts and circumstances that existed at the time condemnation was decided upon or within the foreseeable future.

The wording of the instruction appears to come from at least two of the cases cited by HL & P, as well as from the Black's Law Dictionary definition of "arbitrary." *See Wagoner,* 345 S.W.2d at 763; *Webb,* 219 S.W.2d at 584. The trial judge acted within his discretion in submitting these instructions. *Clancy v. Zale Corp.,* 705 S.W.2d 820, 825 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). By defining abuse of discretion as a decision "not done according to reason or judgment" (i.e., without judgment), the trial court precluded a finding of abuse of discretion based on a mistake in judgment. HL & P's points of error eleven through thirteen concerning the incorrect submission of Special Issue No. 1 are overruled.

 HL & P also argues that the evidence is legally and factually insufficient to raise the issue or to support the finding on abuse of discretion and is legally insufficient to raise the issue of actual damages. In reviewing a no evidence point, an appellate court must consider only that evidence and reasonable inferences drawn therefrom in the light most favorable to support the jury's findings disregarding all contrary evidence and inferences. *King v. Bauer,* 688 S.W.2d 845, 846 (Tex.1985).

As the need for electrical power increases, so does the need for increased voltage to transmit that power efficiently. The electrical current flowing through a transmission line generates an electromagnetic field. The more current that flows through the line, the greater the electromagnetic field. This case concerns the effect of that greater field on the human body. Our role is not to determine the merits of the controversy but to review the jury's finding.

HL & P employees have attempted to understand this controversy by reading literature and attending seminars. The company's files contained many articles on the subject. Some concluded that health risks do exist while others stated that it was "reasonably well established" that there are no significant biological effects or that "insufficient evidence is available" to conclude that such effects exist. However, the majority of those latter articles also called for further research.

Several expert witnesses testified for Klein. Dr. Marvin Chadkoff, an associate professor of engineering, measured the electromagnetic fields emitted by the lines on the school complex. He testified that at the intermediate school, which is some 300 feet from the line, the range of magnetic fields at ground level the students are presently receiving is between six and ten milligauss. He further stated that a television set emits fourteen milligauss at the source and zero milligauss at six feet.

Dr. Nancy Wertheimer, an epidemiologist, testified about the studies she and others have conducted which show correlations between power lines and cancer. Her study of childhood cancer concluded that children who lived near wires that put out current and have magnetic fields were two or three times more apt to have cancer than children who did not. She stated that the data strongly suggests that long-term exposure is an important element. She further testified that she did not know whether electromagnetic field exposure causes cancer, but that she believed the exposure prevents the body from protecting itself against cancer. Dr. Wertheimer concluded that the children in each of the three schools would probably experience an increased risk of cancer and that it is indefensible to expose them to that risk.

Dr. Jerry Phillips, an oncologist whose work deals with the effect of 60Hz electromagnetic fields on human cancer cells and white blood cells, testified similarly. His laboratory studies indicated that exposure causes the cancer cells, which develop regularly in everybody, to grow to a greater extent than non-exposed cells and to become more resistant to destruction. These changes also appear to be permanent. White blood cells exposed to magnetic fields show a statistically significant decrease in the ability to grow and divide as required to perform their function as part of the body's defense system. It is Dr. Phillips' opinion that the children attending the schools in question faced a significantly increased risk of cancer and that it is an unnecessary risk.

Finally, the jury heard Dr. Harris Busch, chairman of the department of pharmacology at Baylor College of Medicine, characterize the energizing of the transmission line as an "inadvertent prospective experiment ... testing whether the electromagnetic fields emanating from the 345,000 volt transmission line facility will alter the health of the children of the Klein School District." He pointed out that the electromagnetic fields are not obstructed by anything, including the buildings, and that the children are exposed every school day throughout the school year for as many as thirteen years.

An HL & P employee testified that HL & P did not take magnetic fields into consideration in routing transmission lines, having dismissed this concern "early on, not being of the magnitude...." In spite of Klein's concerns about the health and safety risks created by the lines and their supporting towers, HL & P declined to reroute the line partly because it would cost more, involve five to ten additional landowners and require re-certification. An HL & P inter-office memorandum stated that the increased cost would result, not from higher construction costs, but from the cost of acquiring what was termed "prime subdivision property." However, as late as 1985, that land had not yet been developed. An alternative route was also rejected in the planning stages because of its greater cost.

The foregoing is some evidence from which the jury could have determined that HL & P abused its discretion in taking the Klein property. Consequently, there was also evidence to raise Special Issue No. 2 concerning actual damages. HL & P's

points of error six through ten and fifteen are thus overruled.

In reviewing an insufficient evidence point, an appellate court must consider and weigh all of the evidence and determine whether it is insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986), citing *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). We are not free to substitute our judgment for that of the jury if the jury properly exercised its discretion. *Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex.Civ. App.—Amarillo 1981, writ ref'd n.r.e.).

HL & P argues that Klein's evidence clearly establishes that HL & P was aware of and carefully considered scientific opinion as to the adverse health effects from the transmission lines and that there is room for differing scientific opinion. There are approximately 6,000 miles of 345kv line in Texas, 950 of which are in the HL & P system. Charles Bennett, a supervising engineer in HL & P's Engineering Planning Department who was responsible for monitoring the health effects, testified about his assessment of various studies and his conclusion that the lines cause no ill effects. Another HL & P employee, Allen Hague, the right-of-way agent involved in this tract, testified that he has two children attending the intermediate school on the Klein complex and does not consider the electric or magnetic fields created by this particular line to be harmful. Bennett discussed the route selection process and why other routes were not feasible due to cost, nearby airports, and the involvement of even more landowners. One advantage of the route chosen was that it followed a railroad corridor. Hague testified about the negotiations with the school district and HL & P's efforts to accommodate its requests short of moving the line. HL & P did offer to relocate the line on the same property, which was unacceptable to Klein. HL & P also agreed to decrease the number of towers on the property and to place them in a more esthetically pleasing manner.

HL & P's evidence also focused on testimony that HL & P spent years determining the "most competent" route for the transmission line. The planning phase involved mathematical modeling, computer modeling, population and need analyses and other engineering studies. HL & P then complied with the statutory requirements and obtained certification of the line from the PUC. Charles Bennett testified, however, that the PUC did not know this particular line crossed school district property when it granted HL & P's application. In addition, HL & P never submitted any type of evidence to the PUC on the health effects of this line nor did any landowners go before the PUC to present any such evidence. Allen Hague testified that one reason the line could not be rerouted was because HL & P did not have permission to do so without amending the PUC certificate. However, at least two other amendments regarding reroutes were requested and approved for two other tracts of land.

HL & P argued that the scientific evidence was too speculative to serve as a basis for an abuse of discretion finding. HL & P contested Dr. Chadkoff's electromagnetic measurements with measurements taken by Charles Bennett and the HL & P expert, Dr. Edwin Carstensen. These showed the maximum exposure to be one and a half milligauss to two milligauss. Those measurements were made on a Sunday on an overcast day with temperatures in the range of 65 to 70 degrees. Chadkoff's were done on five separate days (one Monday, one Wednesday and three Fridays) between September and November during the time of day the children were in attendance.

Testifying for HL & P, Dr. Carstensen, a professor of electrical engineering and of radiation biology in biophysics, critiqued both Dr. Wertheimer's and Dr. Phillips' studies. He pointed out that epidemiological research has serious limitations in that it studies people in their normal living conditions and has little control over the factors introduced. Thus, only when results are large scale or show extremely unusual effects are they taken very seriously. Dr. Carstensen stated that Dr. Phil-

lips' cancer cell study represents a single experiment repeated over and over again and suggested that there could be something besides the magnetic field that is producing the effect.

Dr. Carstensen's own conclusion is that the electromagnetic field is not a major danger since all of the consensus groups which have been assembled have failed to find any specific effects. He was asked by Klein to discuss a summary which he prepared for the American Institute of Biological Sciences in May of 1985 as part of its study of the literature since 1977 on electromagnetic fields and their biological effects. Klein characterized at least thirty of the studies reviewed by Dr. Carstensen for the document as having reported adverse effects by electromagnetic fields. In response, Dr. Carstensen maintained that none of those have been regarded as worth considering by the consensus groups that study the subject.

The evidence detailed above is only part of what the jury saw and heard. Based on this evidence the jury could have believed that the transmission lines posed a risk to the children and that the uncertainty over the magnitude of that risk should dictate caution. The jury could have believed that by 1981, HL & P had launched itself on a course of action from which it refused to deviate in the face of continued opposition from the school district. The jury could have believed that although concern over health effects has increased, HL & P has refused to take these concerns into consideration when locating lines and putting them into operation. Ultimately, the jury could have believed that HL & P's actions were "not done according to reason or judgment" and, therefore, constituted an abuse of discretion. HL & P's point of error fourteen that the evidence was factually insufficient to support the jury's answer to Special Issue No. 1 is thus overruled.

HL & P's points of error sixteen through thirty-five contest the $25 million punitive damages award. HL & P first contends that punitive damages are not recoverable in a condemnation proceeding.

A condemnation proceeding is governed by statute. *Coastal Industrial Water Authority v. Celanese Corp. of America,* 592 S.W.2d 597, 599 (Tex.1979). The Texas Property Code provides that if a court determines that a condemnor who has taken possession of property pending litigation did not have the right to condemn the property, the court may award the property owner the damages that resulted from the temporary possession. Tex.Prop.Code Ann. § 21.044(a) (Vernon 1984). Texas courts have construed this language as limiting condemnation damages to the market value of the property itself. *City of Austin v. Casiraghi,* 656 S.W.2d 576, 582 (Tex. App.—Austin 1983, no writ); *see also Harris County v. Gordon,* 616 S.W.2d 167, 169 (Tex.1981); *Matador Pipelines of Texas, Inc. v. Martin,* 684 S.W.2d 165, 168 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

In its objections to the special commissioners' award, Klein alleged that because HL & P's abuse of discretion rendered the condemnation void, its entry into possession of the property constituted a trespass and that punitive damages are recoverable in a tort action. *Bellefonte Underwriters Insurance Co. v. Brown,* 704 S.W.2d 742, 745 (Tex.1986). Therefore, Klein argues that the $25 million punitive damages are recoverable for trespass. The issue becomes whether HL & P's entry into possession of the property was a trespass, which is an injury to land committed by one not rightfully in possession. *R.C. Bowen Estate v. Continental Trailways, Inc.,* 152 Tex. 260, 256 S.W.2d 71, 72 (1953).

A condemnation proceeding is governed by statute and the statutory requirements are to be strictly followed. *Coastal Industrial Water Authority v. Celanese,* 592 S.W.2d at 599. Pursuant to Tex.Prop.Code Ann. § 21.021 (Vernon 1984), after the special commissioners have made an award in a condemnation proceeding, a condemnor may take possession of the condemned property pending the results of further litigation if the condemnor does the following:

(1) pays the property owner the amount of damages and costs or deposits

that amount with the court subject to the order of the property owner;

(2) deposits with the court either the amount awarded as damages or a surety bond in the same amount, conditioned to secure the payment of an award by the court in excess of the special commissioners' award; and

(3) executes a bond approved by the judge and conditioned to secure the payment of additional costs that may be awarded by the trial court or on appeal.

Following the special commissioners' award, HL & P made the requisite deposits, filed the requisite bonds and took possession of the property. Having thus strictly complied with § 21.021, HL & P was rightfully in possession of the property and cannot be guilty of a trespass. Even if HL & P had abused its discretion in condemning the land, that act does not make HL & P's entry a trespass. The fact that HL & P entered upon the land knowing that the suit was pending is irrelevant. Section 21.021 covers such a situation with the language "pending the results of further litigation." As HL & P is not a trespasser that can be held liable for tort damages, punitive damages cannot be assessed. Points of error 26(e) and 29(c) are thus sustained, and as the remaining points in this group are also arguments against punitive damages, they need not be addressed.

HL & P next argues, in point of error thirty-six, that the trial court erred in the admission and exclusion of certain evidence resulting in an improper and unfair verdict and judgment.

■ First, HL & P complains of the exclusion of Plaintiff's Exhibit 16, a report and order of the PUC in a proceeding concerning another power line. It was offered as probative of HL & P's state of mind in exercising its discretion. That order dealt with a different transmission line in a different location. Although the report addressed the safety of the line, it apparently did so in the context of the neurological or muscular effects produced by an electric field rather than the possibility of cancerous effects of an electromagnetic field. The report was therefore properly excluded.

■ HL & P next argues that the trial court erred in admitting Defendant's Exhibits 70 and 76, which were charts summarizing studies of power lines and health effects. HL & P objected to both as hearsay because the underlying studies were hearsay. While it is likely that the exhibits were not admissible, the error was not such as to cause the rendition of an improper verdict. Drs. Wertheimer and Phillips discussed the studies in detail during their testimony, and HL & P had the opportunity to cross-examine them concerning those studies. The evidence "summarized" in Defendant's Exhibits 70 and 76 was already before the jury.

■ HL & P also contends that the trial court erred in admitting Defendant's Exhibits 89 through 96 and in permitting them to be taken into the jury room. These exhibits were large cards containing excerpts from Dr. Busch's testimony. It was within the trial court's discretion to admit them and if error, it was harmless. *Speier v. Webster College,* 616 S.W.2d 617, 618 (Tex.1981). It was not an abuse of discretion. Once the cards were admitted as exhibits, the trial court was required to send all exhibits admitted into evidence to the jury room during the jury's deliberations. *First Employees Ins. Co. v. Skinner,* 646 S.W.2d 170, 172 (Tex.1983).

■ Finally, HL & P argues that the trial court erred in not permitting Charles Bennett, its chief of engineering and planning, to testify on the health effects of transmission lines and on HL & P's belief regarding the health effects of those lines. Error, if any, was harmless, however, as Mr. Bennett did testify at other times during the trial as to his opinion and that of HL & P. Other HL & P officials also testified in this regard, and thus the jury had the benefit of this information in their

deliberations. Point of error thirty-six is overruled.

■ In point of error thirty-seven, HL & P claims that the trial court erred in allowing Klein to open and close in presenting evidence and final arguments because Klein did not stipulate to all issues except damages and Klein's Rule 266 Admission did not meet the requirements of that rule. Tex.R.Civ.P. 266 provides that where the burden of proof rests upon the defendant, it shall have the right to open and close.

Klein admitted that HL & P has been vested with the power to condemn property for the general purposes stated in its petition and also admitted that the only issue raised as to the propriety of the exercise of that power was HL & P's abuse of discretion in condemning the school district's property. HL & P argues that the abuse of discretion allegation actually questioned the necessity of the taking, which was a burden that HL & P had to prove. In a condemnation case, it is the condemnee who must show that the condemnor abused its discretion. *See Austin v. City of Lubbock*, 618 S.W.2d 552, 555 (Tex.Civ.App.—Amarillo 1981), *rev'd on other grounds*, 628 S.W.2d 49 (Tex.1982); *City of Wichita Falls v. Thompson*, 431 S.W.2d 909, 910 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.); *Wagoner*, 345 S.W.2d at 763. As the only issue was one on which Klein had the burden of proof, the trial court properly allowed Klein to open and close both the evidence and the argument. Point of error thirty-seven is overruled.

■ In its final point of error, HL & P re-urges its previously-filed motion to reverse and remand because portions of the statement of facts are missing. This motion was carried with the appeal. The missing portions are HL & P's motion for directed verdict and the trial court's ruling (evidently lost by the court reporter), portions of HL & P's objections and exceptions to the jury charge and the trial court's ruling (again, lost by the court reporter), the argument on the opening day concerning Klein's right to open and close the evidence and argument (not recorded), and certain exhibits tendered in an effort to reconstruct the missing portions of the statement of facts.

A new trial should be granted only where it appears that no other action will adequately protect appellant's right to review by the court of appeals. *Wolters v. Wright*, 623 S.W.2d 301, 305–06 (Tex.1981). In this case, the missing portions of the statement of facts were not critical to appellate review. HL & P complained in seven of its points of error that the trial court erred in overruling the motion for directed verdict. These were adequately presented for review and are addressed herein.

The argument on opening day concerning Klein's Rule 266 motion was preserved by being reargued the following day. HL & P's arguments in connection with this matter are considered under point of error thirty-seven and we have determined that the trial court was not in error in its ruling on the motion.

HL & P's objection and exceptions to the jury charge and the dispute over whether the trial court ruled on them is also before us. HL & P's points of error have been responded to in a substantive manner and none have been dismissed for failure to preserve error. Therefore, HL & P's rights have not been prejudiced on appeal, either on procedural grounds or because of the missing portions of the record. Point of error thirty-eight, as well as HL & P's motion to reverse and remand, is thus overruled.

Klein has conditionally appealed the trial court's judgment should this court determine that Klein is not entitled to that judgment as a matter of law. In view of our affirmation of the trial court's judgment denying HL & P condemnation and possession of Klein's property, the cross-appeal is not reached.

Several motions were carried with this appeal. Klein's Motion to Strike Exhibits to HL & P's Petition for Writ of Mandamus and to Reply Brief in Support of its Re-

quest for Stay and Petition for Writ of Mandamus is granted. Klein's Motion to Strike Portions of Transcript filed with Clerk of Court of Appeals is granted. Klein's Motion for Leave to File Exhibits is granted.

The judgment of the trial court is modified to delete the exemplary damages, and the judgment is affirmed as modified. It is noted that HL & P has applied for and the PUC has granted permission to relocate the transmission lines so as to avoid the school complex.