HOUSTON LIGHTING & POWER COMPANY, Petitioner,

v.

Carol Ann Hauser REYNOLDS, Individually and as Natural Mother of Carl David Reynolds and Carl David Reynolds, Individually, Respondents.

No. C–5499.

Supreme Court of Texas.

Nov. 30, 1988.

Rehearing Denied March 29, 1989.

Joe R. Greenhill, Larry F. York, Austin, Stephen G. Tipps and Thomas R. Ajamie, Houston, Baker & Botts, for petitioner.

Donna Cywinski, McKenna & Cywinski, W. James Kronzer, George P. Hardy, III, Hardy, Milutin & Johns, Houston for respondents.

COOK, Justice.

Sixteen year old Carl David Reynolds was in a friend's backyard taking down a tent. He coupled eight 3–foot aluminum tent poles together in order to touch a powerline 26 feet and 9 inches above the ground. The powerline ran across an easement on his friend's backyard and carried 35,000 volts of electricity. Carl contacted the powerline after being warned by his friend that he might get shocked. The resulting injuries necessitated the amputation of both legs and one arm.

Reynolds sued Houston Lighting and Power, the owner of the powerline; Homecraft Land Development, the subdivision developers; Chicago Tents, the tent manufacturer; Vernon A. Henry and Associates, land planner; Putney, Moffat and Easley, subdivision engineers; and U.S. Home, the home builder. Before trial, Reynolds settled with U.S. Home and Homecraft Land Development for $700,000 plus a guarantee

of an additional $1,300,000 if Reynolds did not receive that sum from the other defendants. All remaining defendants other than HL & P were non-suited.

The jury found against HL & P on the basis of strict liability pursuant to RESTATEMENT (SECOND) OF TORTS § 402A (1965) ("Section 402A") and conscious disregard of the welfare of Reynolds. The trial court rendered judgment on the jury verdict for $2,731,847.49 actual damages and $1,000,000 punitive damages. The court of appeals affirmed the judgment of the trial court. 712 S.W.2d 761.

The dispositive issues are: (1) whether electricity in a transmission line, prior to being transformed into voltage usable by a consumer, is a product; and (2) is such electricity in the stream of commerce.

We adopted Section 402A in our opinion in *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 789 (Tex.1967). In order to recover for an injury on the theory of strict liability in tort, the plaintiff bears the burden of proving that the defendant: (1) placed in the stream of commerce a product; (2) that such product was in a defective or unreasonably dangerous condition; and (3) that there was a causal connection between such condition and the plaintiff's injuries or damages. *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 376 (Tex. 1978).

The question of whether electricity in this case was a product is an issue of first impression for this court. Two Texas courts of appeals have addressed the question and reached conflicting results. In *Erwin v. Guadalupe Valley Elec. Co-op.*, 505 S.W.2d 353, 355–56 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.), the court assumed without discussion that electricity was a product. In *Navarro County Elec. Co-op., Inc. v. Prince*, 640 S.W.2d 398, 400 (Tex.App.—Waco 1982, no writ), the court held that electricity was not a product, rather, it was a service.

■ We agree with the better reasoned opinions of other jurisdictions which hold electricity to be a product. Electricity is a commodity, which, like other goods, can be manufactured, transported and sold. *Pierce v. Pacific Gas & Elec. Co.*, 166 Cal.App.3d 68, 81, 212 Cal.Rptr. 283, 290 (1985). Electricity is a form of energy that can be made or produced by man, confined, controlled, transmitted and distributed to be used as an energy source for heat, power and light. *Ransome v. Wisconsin Elec. Power Co.*, 87 Wis.2d 605, 610, 275 N.W.2d 641, 643 (1979).

■ Was the electricity which injured Carl Reynolds in the stream of commerce? The transmission line carried 35,000 volts of electricity. To be usable by a consumer the electricity had to be reduced by a transformer from 35,000 volts to 110–220 volts. Until the process was completed, the electricity was not transferred from HL & P's transmission line through a meter to the lines of a customer.

There is evidence that HL & P produced all of its electricity in response to anticipated demand. Further, once the electricity was placed in a transmission line it could not be recalled. However, this is not evidence that the electricity was delivered to any customer prior to transformation into a usable voltage.

Strict product liability applies only if a product is expected to and does reach the user without substantial change in the condition in which it is sold. *Rourke v. Garza*, 530 S.W.2d 794, 798 (Tex.1975). Following this reasoning, even if HL & P could be considered to have sold the electricity when it was placed in the transmission lines, it would not reach the consumer in that same condition.

The courts of our sister states are not in agreement as to whether electricity is a product or a service, but they are all in agreement that contact with a high voltage transmission line does not come within the purview of Section 402A. We have found no case, other than the court of appeals' opinion in this case, which has so held. *See United Pac. Ins. Co. v. Southern Cal. Edison Co.*, 163 Cal.App.3d 700, 705, 209 Cal.Rptr. 819, 821 (1985); *Smith v. Home Light & Power Co.*, 734 P.2d 1051, 1085 (Colo.1987); *Genaust v. Illinois Power Co.*,

62 Ill.2d 456, 464–65, 343 N.E.2d 465, 470 (1976); *Hedges v. Public Serv. Co.*, 396 N.E.2d 933, 935 (Ind.App.1979); *Petroski v. Northern Ind. Pub. Serv. Co.*, 171 Ind. App. 14, 30–31, 354 N.E.2d 736, 747 (1976); *Williams v. Detroit Edison Co.*, 63 Mich. App. 559, 568, 234 N.W.2d 702, 707 (1975); *Wood v. Public Serv. Co.*, 114 N.H. 182, 188–89, 317 A.2d 576, 579 (1974); *Aversa v. Public Serv. Elec. & Gas Co.*, 186 N.J.Super. 130, 134–35, 451 A.2d 976, 979 (1982); *Farina v. Niagara Mohawk Power Corp.*, 81 A.D.2d 700, 700, 438 N.Y.S.2d 645, 647 (1981); *Kemp v. Wisconsin Elec. Power Co.*, 44 Wis.2d 571, 583, 172 N.W.2d 161, 166 (1969).

■ A utility may be negligent in transmitting its unfinished product to a consumer's meter. The jury found HL & P to have been negligent only in failing to warn of the danger of contacting the powerline. The court of appeals held that there was no evidence to support that finding. We agree. An electric company's duty to warn of contact with electrical lines arises when it: (1) has failed to comply with applicable codes or ordinances governing the placement of lines; or (2) has reason to anticipate that the lines would be dangerous to the plaintiff. Since the powerline was ten feet higher than required by the National Electrical Safety Code, Reynolds had to prove some independent reason for the utility to have anticipated that the lines would be dangerous to him. *Houston Lighting & Power Co. v. Brooks*, 161 Tex. 32, 336 S.W.2d 603, 608 (1960). Reynolds has failed to establish any facts, other than the existence of the powerline, giving rise to a duty to warn on the part of HL & P.

The judgments of the court of appeals and the trial court are reversed and judgment is rendered that Reynolds take nothing against Houston Lighting & Power Company.

TOM LUCE, C.J., sitting by special appointment, as PHILLIPS, C.J., is not sitting.

KILGARLIN, J., files a dissenting opinion in which RAY, ROBERTSON and MAUZY, JJ., join.

TOM LUCE, Chief Justice, concurring.

While I agree with the majority's disposition of the negligence claim under the rationale of *Houston Lighting & Power Co. v. Brooks*, 161 Tex. 32, 336 S.W.2d 603 (Tex.1960), I also believe that the rationale of *Brooks* disposes of the Reynolds' strict liability claim. I would hold that *Brooks* controls the standard of forseeability for "duty-to-warn" strict liability claims as well as for negligence claims. Accordingly I do not believe it is necessary to decide whether the electricity in this case is a "product" or whether it is in the "stream of commerce" under the RESTATEMENT (SECOND) OF TORTS § 402A (1965).

We have said that a manufacturer can be strictly liable for failure to warn when it "knows or should know of potential harm to a user because of the nature of its product." *Crocker v. Winthrop Laboratories*, 514 S.W.2d 429, 433 (Tex.1974); *accord Bristol–Myers Co. v. Gonzales*, 561 S.W.2d 801, 804 (Tex.1978). This knowledge requirement must be understood in the context of the "unreasonably" dangerous limitation. An imaginative manufacturer might conceive of many potential harms that might be caused by its product, but it will be liable for only the failure to warn of harms caused by uses of the product "contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." RESTATEMENT (SECOND) OF TORTS § 402A, comment i. The manufacturer thus has a duty to warn of harm resulting from only those uses of its product that are *reasonably* foreseeable.[1] *See Beans v. Entex, Inc.*, 744 S.W.2d

---

1. The reasonable foreseeability limitation in duty-to-warn strict products liability would not necessarily apply to other aspects of strict liability. For example, the manufacturer may be liable for manufacturing or design defects even if it could not have foreseen the danger to the user. *Turner v. General Motors Corp.*, 584 S.W.2d 844, 851 (Tex.1979).

It is also important to distinguish between reasonably foreseeable *use* and reasonably fore-

323, 325 (Tex.App.–Houston [1st Dist.] 1988, writ den.); *Blackwell Burner Co., Inc. v. Cerda,* 644 S.W.2d 512, 516 (Tex. App.–San Antonio 1982, writ ref'd n.r.e.); *Pearson v. Hevi–Duty Electric,* 618 S.W.2d 784, 787 (Tex.Civ.App.–Houston 1981, writ ref'd n.r.e.); *Alberto–Culver Co. v. Morgan,* 444 S.W.2d 770, 776 (Tex.Civ.App.– Beaumont 1969, writ ref'd n.r.e.); *Cudmore v. Richardson–Merrell, Inc.,* 398 S.W.2d 640, 644 (Tex.Civ.App.–Dallas 1965, writ ref n.r.e.); *Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076, 1088 (5th Cir.1973); RESTATEMENT (SECOND) OF TORTS § 402A, comment j. "Reasonable foreseeability is limited to uses that are objectively reasonable to expect and anticipate in the use of a product; it does not encompass uses that are totally bizarre, aberrational or which represent wholly unexpected product misuse."[2] Sales, *Product Liability Law in Texas* § 1.01 at 57–58 (1985).

Commentators have suggested that the standard of reasonable foreseeability in the duty-to-warn context is the same in strict products liability as in negligence. *See* Powers, *Texas Products Liability Law* § 5.0342 at 5–41 (1988); Kidwell, *The Duty to Warn: A Description of the Model of Decision,* 53 Tex.L.Rev. 1375, 1377–78 (1975). At least two federal courts have so held explicitly. *Borel,* 493 F.2d at 1088; *Basko v. Sterling Drug, Inc.,* 416 F.2d 417,

426 (2d Cir.1969). While the Court of Appeals in this case has suggested that a lesser degree of risk may be sufficient to establish a duty to warn in products liability than in negligence, I see no reason to make distinctions between degrees of reasonableness; the majority does not reach this issue, however, and it remains an open question. If a plaintiff's behavior is not reasonably foreseeable so as to create a duty to warn under the law of negligence, then the product is also not unreasonably dangerous because the manufacturer did not warn of the consequences of such use.[3] Because HL & P is not negligent as a matter of law under *Brooks,* I would hold that it is also entitled to a judgment on the strict liability claim. Thus, I concur in the majority's judgment on the strict liability claim; because I do not believe it is necessary to reach the questions of whether electricity is a "product" or in the "stream of commerce," I do not join in that portion of the majority's opinion.

KILGARLIN, Justice, dissenting.

I respectfully dissent. For the reasons so ably stated by the author of the opinion in this case in the court of appeals,[1] I would hold that the doctrine of strict liability, as set forth in the Restatement (Second) of Torts § 402A (1965), is applicable to cases involving injurious contact with public utility power lines. 712 S.W.2d 766–67.

seeable *harm.* It has been argued that a manufacturer should be strictly liable for all harm caused by foreseeable use of its product, even if the potential harm was not reasonably foreseeable or scientifically discoverable, if the product would have been unreasonably dangerous without a warning had the potential harm been known. *See* Green, *Strict Liability Under Sections 402A and 402B: A Decade of Litigation,* 54 Tex.L.Rev. 1185, 1203–06, 1211–12, 1219 (1976); Keeton, *Products Liability—Inadequacy of Information,* 48 Tex.L.Rev. 398, 404, 409 (1970). In this case, HL & P knew of the potential *harm* —that one who touched its powerlines with an aluminum pole would be seriously injured. The question is: was the potential *use* of its product, if that is what the intentional touching of an overhead powerline can be called, reasonably foreseeable so as to make the powerlines unreasonably dangerous without a warning.

2. Product misuse, even if unforeseeable, is not an absolute defense to strict products liability

*where the product is unreasonably dangerous. Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 423 (Tex.1984). A product is not unreasonably dangerous, however, solely because a manufacturer failed to warn of potential harm resulting from product use or misuse that is not reasonably foreseeable.

3. Again, I would distinguish between the duty to warn of harm resulting from unforeseeable use, where there is no duty under either the negligence or strict products liability standards, and the duty to warn of harm resulting from foreseeable use. I do not consider the issue of whether in the latter case the manufacturer may be strictly liable even if it could not have known of the potential harm at the time the product was marketed.

1. Retired Chief Justice of the First Court of Appeals Tom F. Coleman, sitting by assignment.

Electricity is a product. *Pierce v. Pacific Gas & Elec. Co.*, 166 Cal.App.3d 68, 212 Cal.Rptr. 283 (Cal.Ct.App.1985); *Ransome v. Wisconsin Elec. Power Co.*, 87 Wis.2d 605, 275 N.W.2d 641 (Wis.1979). The electricity causing the grievous injuries to the Reynolds boy had already entered the stream of commerce. *Aversa v. Public Serv. and Gas Co.*, 186 N.J.Super. 130, 451 A.2d 976 (N.J.Super.Ct.Law Div.1982). Once Houston Lighting & Power released the electricity into the transmission lines, it was never to be stored, never to be recalled. Houston Lighting & Power had forever relinquished control of the electricity. Indeed, this court concedes that Houston Lighting & Power only produced electricity to meet anticipated demand, and thus released all of the electricity it produced.

The court, however, reasons that because the Reynolds boy came into contact with a transmission line containing electricity that had not yet been reduced by a transformer, it was not in final form for consumer usage. In support of this position, the court relies upon *Rourke v. Garza*, 530 S.W.2d 794 (Tex.1975). Admittedly, the court correctly quotes the applicable proposition in *Rourke* that strict liability of a seller depends upon the product reaching the user without substantial change in the condition in which it is sold. *Id.* at 798. What the court does not do, however, is to discuss the facts of *Rourke*, which are not dissimilar to those in this case. In *Rourke*, the lessor of a disassembled scaffold was held to be strictly liable when the scaffold, once assembled into its final usable form, was determined to be defective. Just as in *Rourke*, in our case all the component parts of the product designed for consumer usage were present in the 35,000 volt transmission line, albeit not yet assembled or transformed into the intended final condition.

Also, the court seems to place emphasis on the delivery aspect of the product, for after conceding that electricity once in the transmission line could not be recalled, the court states "[h]owever, this is not evidence that the electricity was *delivered* to any customer prior to transformation into a usable voltage" (emphasis added). 765 S.W.2d at 785. But, under Texas law, there is no requirement of proof of delivery of the product. "The liability created by the doctrine of strict liability rests on foreseeability, and not on esoteric concepts relating to transfer or delivery of possession." *Davis v. Gibson Prods. Co.*, 505 S.W.2d 682, 691 (Tex.Civ.App.—San Antonio), *writ ref'd n.r.e.*, 513 S.W.2d 4 (Tex. 1974).

The court seemingly draws comfort that a majority of jurisdictions do not apply strict liability to incidents of contact with high voltage lines. That Texas might find itself among a minority of jurisdictions should we adopt strict liability is of no great import. Indeed, on other occasions this court has aligned itself with minority positions. "[W]hatever may be the majority rule in other jurisdictions or be the expression of commentators does not necessarily mean it will be the rule of law in Texas." *Hofer v. Lavender*, 679 S.W.2d 470, 473 (Tex.1984). *See also Givens v. Dougherty*, 671 S.W.2d 877 (Tex.1984), and *LeCroy v. Hanlon*, 713 S.W.2d 335, 346 (Tex.1986) (Gonzalez, J., dissenting).

Additionally, I am concerned about the potentially constraining impact of the court's opinion on courts considering evidence of the adverse health effects of prolonged exposure to electric and magnetic fields emitted by high voltage lines. By declaring at this time that prior to entering the transformer electricity is not a product in the stream of commerce, we possibly curtail in its infancy the development of an area of law speaking to new compelling and terrifying scientific evidence. *See, e.g., Klein Indep. School Dist. v. Fourteenth Court of Appeals*, 720 S.W.2d 87 (Tex. 1986) (for allegations that prolonged exposure to high power lines may produce leukemia, brain tumors, and other forms of cancer) and *Houston Lighting & Power Co. v. Klein Indep. School Dist.*, 739 S.W. 2d 508, 516 (Tex.App.—Houston [14th Dist.] 1987, writ pending) (for proof of those allegations with a resulting $25,000,-000 punitive damages verdict).

Accordingly, I respectfully dissent from a judgment of reversal.

RAY, ROBERTSON and MAUZY, JJ., join in this dissenting opinion.