**ARMSTRONG RUBBER COMPANY,**
Petitioner,

v.

**Conrada URQUIDEZ and Clemente Urquidez, Jr., Respondents.**

No. B–7439.

Supreme Court of Texas.

July 5, 1978.

Rehearing Denied Oct. 4, 1978.

Rassman, Gunter & Boldrick, John E. Gunter, Midland, for petitioner.

Warren Burnett Associated, Richard J. Clarkson, Odessa, for respondents.

McGEE, Justice.

This appeal involves the question whether the doctrine of strict liability in tort applies where the product has not entered the stream of commerce and where there has been no sale of the product by the manufacturer but a bailment for mutual benefit. The widow and son of test driver Clemente Urquidez brought suit against Armstrong Rubber Company. The plaintiffs pled that Urquidez was killed as the result of a blowout of a tire alleged to be defective in design and manufacture. The trial court rendered judgment on the jury's determination that the tire was defective in its design or manufacture and that the defect was the producing cause of the accident. The widow was awarded $75,000 and the son $12,000 with the award subject to the subrogation rights of the intervening worker's compensation carrier. The Court of Civil Appeals affirmed. 560 S.W.2d 781. We reverse the judgments below and render judgment that the plaintiffs take nothing.

Automotive Proving Grounds, Inc. owns and operates a tire-testing facility near Pecos. On January 1, 1970, Automotive contracted to provide testing facilities to the defendant, Armstrong, on a part-time basis for a period of ten years. Under the contract Armstrong agreed to provide and maintain all trucks and vehicles required for its testing. It was Automotive's responsibility to maintain the track and buildings comprising the testing facility, to provide drivers, mechanics, and other personnel necessary for testing purposes and to promulgate safety rules and driver qualifications.

The deceased, Clemente Urquidez, was employed by Automotive as a test driver. At the time of the accident, he was driving a tractor/trailer rig owned by Armstrong. Urquidez was performing a standard test at 60 m. p. h. on the oval test track when the left front tire of the tractor blew out. Urquidez decelerated the truck into the infield area of the oval track where he encountered soft sand, overturned and was killed. The tire that blew out was an Allstate Express Cargo Nylon 12-ply non-interest spare manufactured by Armstrong. Both front tires on the tractor were non-interest spares. A "non-interest spare" is a term applied to a tire mounted on the test truck along with the tires being tested, but which is not itself being tested. The tire in question had never been sold by Armstrong. It was new when received at the Pecos facility. The tire was never tested at the Pecos facility but was manufactured and provided for use only as a non-interest spare on Armstrong's trucks. The tire was of the same quality as tires manufactured by Armstrong and sold across the nation.

The doctrine of strict liability as enunciated in the Restatement (second) of Torts § 402A has been adopted as the rule in Texas. *Rourke v. Garza,* 530 S.W.2d 794 (Tex.1975); *Darryl v. Ford Motor Company,* 440 S.W.2d 630 (Tex.1969); *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787 (Tex. 1967). The Restatement imposes liability on sellers of defective products that are unreasonably dangerous and cause damage to a user or consumer. The rule applies to any person engaged in the business of selling products for use or consumption. Restatement (second) of Torts § 402A, comment f (1965). Although phrased in terms of sellers, it is not necessary that the defendant actually sell the product, but only that he be engaged in the business of introducing the product into channels of commerce. *See, Rourke v. Garza, supra.* The product, however, must reach the user in essentially the same condition as when it left the seller's possession. Restatement (second) of Torts § 402A(1)(b) (1965). The

rule applies even though the seller has exercised care in the preparation and sale of the product and even though the user has not purchased the product or entered into any contractual arrangements with the seller. Restatement (second) of Torts § 402A(2) (1965).

The present case was submitted to the jury on the theory of strict liability in tort. Under this theory the plaintiffs bore the burden of proving (1) the defective and unreasonably dangerous condition of the defendant's product and (2) a causal connection between such condition and the plaintiffs' injuries or damages. *See*, J. Sales and J. Perdue, *The Law of Strict Tort Liability in Texas*, 14 Hous.L.Rev. 1, 7–8 (1976–77); R. Hursh and H. Bailey, *American Law of Products Liability 2d*, Sec. 4:10 at 660–64 (1974). Implicit in the first element is the requirement that the plaintiff show that the defendant placed the product in the stream of commerce.

■ Armstrong initially questions the application of the doctrine of strict liability to the tire in question. Armstrong contends that the tire was provided for the industrial purpose of testing other tires and that the accident occurred in its "testing laboratory." Armstrong argues that the defective tire was neither manufactured for market nor placed in the stream of commerce. We agree that the tire never entered the stream of commerce.

■ In extending the doctrine of strict liability to the present bailment, the Court of Civil Appeals emphasized that tires of the same design and manufacture were "regularly sold by Armstrong in regular channels of commerce." We do not believe it sufficient, however, that the seller merely introduce products of similar design and manufacture into the stream of commerce. To invoke the doctrine of strict liability in tort the product producing injury or damage must enter the stream of commerce. In *General Motors Corp. v. Hopkins*, 548 S.W.2d 344, 351 (Tex.1977) we said that liability rests on the defendant "placing into the stream of commerce a product which is demonstrated at trial to have been dangerous."

The Court of Civil Appeals further emphasized that Urquidez was not employed to test non-interest spares. In that court's opinion the dual policy considerations of "loss distribution" and "injury reduction" might best be served by extending the doctrine of strict liability to the present bailment transaction. Armstrong, on the other hand, urges that the policy considerations underlying the doctrine of strict liability in tort should not be advanced as the basis for the doctrine's protection where the essential elements of the doctrine have not been satisfied. Clemente Urquidez was employed to test tires. It was in part his job to provide safe tires for the public. Armstrong therefore argues that he was not the ordinary user or consumer entitled to the protection afforded by strict liability in tort.

■ While we agree that Clemente Urquidez was not hired to test the non-interest spare, we would not extend the doctrine of strict liability in tort on that basis. Although the defective tire was not itself the subject of the test, it was manufactured and provided for the limited purpose of testing other tires. The non-interest spare was never sold and, more importantly, never entered the stream of commerce. We recognize that application of strict liability in tort does not depend upon a sale of the product, nevertheless the product must be released in some manner to the consuming public. *See, Rourke v. Garza, supra; McKisson v. Sales Affiliates, Inc., supra.* The Restatement does not make a manufacturer an insurer of every person who is injured by one of its products. *Martinez v. Dixie Carriers, Inc.*, 529 F.2d 457 (5th Cir. 1976).

As this is a case of first impression, the plaintiffs direct our attention to several cases originating in other jurisdictions which extend the doctrine of strict liability in tort to bailment transactions. *Cf. Whitfield v. Cooper*, 30 Conn.Sup. 47, 298 A.2d 50 (1972); *Nowakowski v. Hoppe Tire Co.*, 39 Ill.App.3d 155, 349 N.E.2d 578 (5th Dist. 1974); *Bainter v. Lamoine LP Gas Co.*, 24

Ill.App.3d 913, 321 N.E.2d 744 (3d Dist. 1974); *Fullbright v. Klamath Gas Co.*, 271 Or. 449, 533 P.2d 316 (1975). We have reviewed these authorities, but do not find them persuasive as each bailment arose in a transaction essentially commercial in character. In *Whitfield*, the defendant bailed its customer a defective car for use while defendant repaired the customer's car. In *Fullbright*, the defendant provided a defective potato vine burner to its customer in connection with defendant's sale of gas. In *Bainter*, the defendant loaned a defective gas tank in which its customer stored gas purchased from defendant. In *Nowakowski*, the defendant substituted a defective wheel assembly from its own stock in the course of repairing its customer's truck. An employee of the customer was subsequently injured while mounting a tire on the defective wheel assembly provided by defendant. In each case cited, the bailment for mutual benefit accompanied a sale of goods or services. In each instance the manufacturer, supplier or retailer released the product to its customer. Accordingly, the product provided was in the stream of commerce. These cases are clearly distinguishable from our present facts where *Armstrong* pursuant to its contract with Automotive provided non-interest spares for the purpose of testing new or experimental tires.

Armstrong never released the non-interest spare to an ordinary user or consumer within the meaning of the Restatement. The defective tire, although not itself the subject of the test, always remained within the industrial, testing process. Accordingly, the tire never entered the stream of commerce. The lower courts, therefore, inappropriately applied the doctrine of strict liability to the present industrial transaction.

The judgments of the Court of Civil Appeals and the trial court are reversed and judgment is here rendered that the plaintiffs take nothing.