IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 13, 2008

Charles R. Fulbruge III
Clerk

No. 07-50188

AFSANEH NAZARI; ET AL

Plaintiffs

HOME DEPOT, U.S.A, INC.

Defendant - Cross Claimant - Appellee

v.

KOHLER CO.

Defendant - Cross Defendant - Appellant

Appeal from the United States United States District Court
for the Western District of Texas
USDC No. 1:05-CV-00924-SS

Before GARZA and DENNIS, Circuit Judges, and MILLS,[*] District Judge.

PER CURIAM:[**]

Kohler Co. ("Kohler") appeals from the district court's grant of summary judgment to Home Depot, U.S.A., Inc. ("Home Depot") on its cross-claim for indemnification. The district court ruled that Kohler has a duty under Texas

---

[*] Chief Judge of the Northern District of Mississippi, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

law to indemnify Home Depot for injuries to a third party caused by a shower door display manufactured by Kohler. At issue in this case is whether the shower door display was placed in the stream of commerce such that Kohler qualifies as its "manufacturer" and Home Depot as a "seller," thereby triggering a duty of indemnity under Tex. Civ. Prac. & Rem. Code § 82.002(a). We conclude the statute requires Kohler to indemnify Home Depot and therefore AFFIRM the judgment of the district court.

## I. BACKGROUND FACTS

Afsaneh Nazari was allegedly injured at a Home Depot store located in Austin, Texas when a shower door display shattered as she opened it. Kohler Co. ("Kohler") manufactured the display. Ms. Nazari and her husband, Asgar Nazari, filed suit against Kohler and Home Depot in the district court raising, inter alia, two products liability claims, one sounding in strict liability and the other in negligence. Home Depot filed a cross-claim against Kohler for indemnification under Tex. Civ. Prac. & Rem. Code § 82.002.[1] The Nazaris eventually settled their claims and Kohler and Home Depot filed cross motions for summary judgment on the indemnification claim. The district court granted summary judgment in favor of Home Depot concluding that it was entitled to indemnification and awarded Home Depot $34,613.39 in defense costs. Kohler filed a timely notice of appeal.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo. Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 325 (5th Cir. 2004). A party is entitled to summary judgment only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine

---

[1] Home Depot also sought attorneys' fees under Tex. Civ. Prac. & Rem. Code § 38.001 and contribution under Tex. Civ. Prac. & Rem. Code § 32.002. The district court granted summary judgment in favor of Kohler on these claims, holding that neither statute applied. Home Depot does not appeal from this part of the district court's ruling.

issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. See Hockman, 407 F.3d at 325. In reviewing the evidence, the court must therefore "refrain from making credibility determinations or weighing the evidence." Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007).

## III. ANALYSIS

Section 82.002(a) of the Texas Civil Practice and Remedies Code provides:

> [A] manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission such as negligently modifying or altering the product, for which the seller is independently liable.

As the Texas Supreme Court recently explained, this statute "was designed to remedy the fundamental unfairness inherent in a scheme that holds an innocent seller liable for defective products manufactured by another by requiring the manufacturer to indemnify the seller unless the seller is independently liable for negligence, intentional misconduct, or any other act or omission." Owens & Minor, Inc. v. Ansell Healthcare Prods., Inc., 251 S.W.3d 481, 487 (Tex. 2008).

By its plain terms, § 82.002 applies only to sellers and manufacturers. "Seller" is defined as "a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof." Tex. Civ. Prac. & Rem. Code § 82.001(3). "Manufacturer" is defined as "a person who is a designer . . . of any product or any component part thereof and who places the product or any component part thereof in the stream of commerce." Tex. Civ. Prac. & Rem. Code § 82.001(4). The sole issue is whether Home Depot and Kohler acted within these definitions of "seller" and "manufacturer" in respect

3

to the shower door display so as to trigger Home Depot's statutory right to indemnification.

Kohler's central argument is that the district court erred in holding that Home Depot was entitled to indemnification because neither party ever intended to sell the shower door display. Thus, Kohler argues the product never entered the stream of commerce and, concomitantly, Home Depot and Kohler do not meet the statute's definitions of "manufacturer" and "seller." Likening the display to a "sample" product, the district court rejected this argument, reasoning that "[b]ecause Home Depot and Kohler both supplied the door display to the public with the expectation of profiting from future sales of that product, each placed the door into the 'stream of commerce' as that term is defined in the context of a products liability action."

The Texas Supreme Court recently set forth the principles of statutory construction under Texas law:

> Our focus when construing a statute is the intent of the Legislature. To give effect to the Legislature's intent, we rely on the plain and common meaning of the statute's words. It is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent.

Owens, 251 S.W.3d at 483 (internal citations and quotations omitted).

Because the statute does not define "stream of commerce," we must rely on other sources of authority to determine the meaning of that phrase. Under Texas law, "[i]n construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the common law or former statutory provisions, including laws on the same or similar subjects[.]" Tex. Gov't Code § 311.023(4). Accordingly, we presume "that the Legislature acted with knowledge of the common law and court decisions" when it enacted the statute. See Phillips v. Beaber, 995 S.W.2d 655, 658 (Tex. 1999) (citing McBride v. Clayton, 166 S.W.2d 125, 128 (Tex. 1942)).

Texas courts have never decided whether installing a display product for in-store use constitutes placing that product in the stream of commerce. Thus, we are required to predict the Texas Supreme Court's determination of this novel issue. Morin v. Moore, 309 F.3d 316, 324 (5th Cir. 2002) ("In making an Erie determination, we are emphatically not permitted to do merely what we think best; we must do that which the Texas Supreme Court would deem best.").

Texas courts generally focus on the foreseeability of the product's use by the consuming public, not on the product's availability for purchase. See Davis v. Gibson Prods. Co., 505 S.W.2d 682, 691 (Tex. Civ. App. -- San Antonio 1973, writ ref'd n.r.e.) (applying strict liability because it was "clearly foreseeable" that a shopper would handle a machete on display). For that reason, the Texas Supreme Court has recognized that a product need not be sold in order to enter the stream of commerce. See Armstrong Rubber Co. v. Urquidez, 570 S.W.2d 374, 376 (Tex. 1978); see also Davis v. Gibson Prods. Co., 505 S.W.2d 682, 691 (Tex. Civ. App. -- San Antonio 1973, writ ref'd n.r.e.) ("[I]t is clear that continuation of the flow of commerce does not require transfers of possession."). Instead, the product need only "be released in some manner to the consuming public." Id. (emphasis added); see also Thate v. Tex. & Pac. Ry. Co., 595 S.W.2d 591, 598 (Tex. Civ App. -- Dallas 1980, writ dism'd) ("Channels of commerce implies that a product is placed for use by or sale to the consuming public.").

Indeed, Texas courts have held manufacturers strictly liable for (1) placing sample products into the stream of commerce, noting that "[o]ne who delivers an advertising sample to another with the expectation of profiting therefrom through future sales is in the same position as one who sells the product," McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787, 792 (Tex. 1967); (2) placing display products intended for sale into the stream of commerce even if the customer ultimately does not purchase the item, Davis, 505 S.W.2d at 689-92; and (3) bailments that accompany the sale of a good or service. New Tex. Auto

Auction Servs., L.P. v. Gomez De Hernandez, 249 S.W.3d 400, 403 (Tex. 2008) (citing Armstrong, 570 S.W.3d at 377). Thus, because Kohler manufactured -- and Home Depot exhibited -- the shower door display to be used by the consuming public for the commercial purpose of profiting from future sales of that very product, Kohler and Home Depot entered the shower door display into the stream of commerce sufficient to satisfy the respective definitions of manufacture and seller under the statute. This interpretation accords with the general purpose of the indemnification statute, i.e., to avoid holding an innocent seller liable for a defective product manufactured by another. Owens, 251 S.W.3d at 487. Accordingly, the district court correctly determined that Home Depot is entitled to indemnification.

Kohler argues the Texas Supreme Court's decision in Armstrong requires a different result. In Armstrong, the decedent-employee was killed while driving a tractor-trailer in order to test tires manufactured by Armstrong Rubber Co. 570 S.W.2d at 375. As the employee drove the tractor-trailer, a defective tire blew and caused the vehicle to crash, killing the employee. Id. The employee worked for a contractor retained by Armstrong to test its tires, meaning the tires came directly from Armstrong. Id. Thus, the defective tire was new when received at the testing facility and had never previously been sold, although it "was of the same quality as tires manufactured by Armstrong and sold across the nation." Id. The employee's family filed suit, alleging Armstrong was strictly liable as the seller of a defective product. See id. at 375-76.

To determine liability, the Texas Supreme Court focused on whether the seller was "engaged in the business of selling products for use or consumption." Id. (citing Restatement (Second) of Torts § 402A cmt. f (1965)). The court first noted that "[a]lthough phrased in terms of sellers, it is not necessary that the defendant actually sell the product, but only that he be engaged in the business of introducing the product into channels of commerce." Id. The court concluded

that Armstrong was not strictly liable because the tire was provided solely for the purpose of testing -- also, the accident occurred in a laboratory -- and thus, the tire "was never sold and, more importantly, never entered the stream of commerce." Id. at 376. The court recognized that tires of the same design and manufacture were "regularly sold by [the manufacturer] in regular channels of commerce," but concluded that the actual product causing the injury must somehow enter the stream of commerce and although it need not be sold, it "must be released in some manner to the consuming public." Id. In analyzing several out-of-state decisions in which strict liability was extended to bailments, the court distinguished those cases on the ground that each case concerned a bailment accompanying the sale of a good or service and thus, the product was placed into the stream of commerce. Id. at 377.

Unlike Armstrong, the instant case involves an allegedly defective product that was actually "released in some manner to the consuming public." The shower door display was intended for consumer use and did, in fact, reach the consuming public, albeit not through a sale. Indeed, the Texas Supreme Court recognized in Armstrong that a product need not be sold in order to enter the stream of commerce. Here, as the district court correctly recognized, Kohler manufactured -- and Home Depot displayed -- the shower door display with the expectation that it would be presented to the consuming public for the commercial purpose of profiting from future sales of that same product. This case therefore stands in contrast to Armstrong, where the manufacturer merely provided the defective product to its own contractor for testing.

Kohler also relies on Culton v. Saks, Inc., Case No. H-04-3001, 2006 WL 2729408 (S.D. Tex. Sept. 25, 2006), in which the plaintiff was injured while riding an escalator at Saks Fifth Avenue ("Saks"). Id. at *1. The plaintiff filed suit, alleging Saks and Montgomery Kone to be liable as the respective operator and manufacturer of the escalator. Id. Saks sought indemnification under

Section 82.002. The district court rejected Saks's claim for indemnification, reasoning that Saks does not engage in the business of releasing either its interest in or its control of the escalator to the consuming public. Id. at *3. Instead, according to the district court, the fact that customers ride the escalator establishes only that it is an "incidental component of a larger business enterprise" and that, if anything, Saks is the consumer of the escalator, not the seller. Id. Culton is inapposite here because the shower door display was presented for examination to customers and was certainly not an incidental component of a larger business enterprise. Instead, as the district court noted, the display was "intimately connected with the business of selling shower doors."

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment to Home Depot on its indemnification claim.

AFFIRMED.