**Opinion issued March 25, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-01016-CV

———————————

**PS INVESTMENTS, L.P. F/K/A PARADIGM SERVICES, L.P., Appellant**

**V.**

**SOUTHERN INSTRUMENT & VALVE COMPANY, INC., Appellee**

On Appeal from the County Court at Law No 2
Galveston County, Texas
Trial Court Case No. CV62534

## O P I N I O N

Appellant, PS Investments, L.P., formerly known as Paradigm Services, L.P.

("Paradigm"), challenges the trial court's summary judgment in favor of appellee,

Southern Instruments and Valve Company, Inc. ("SIVCO"), in its suit against

SIVCO for statutory indemnity.[1]  In four issues, Paradigm contends that the trial court erred in granting SIVCO summary judgment and denying its summary-judgment motion in which it asserted that SIVCO, as a matter of law, had a statutory obligation to indemnify Paradigm.

We affirm.

## Background

In 2006, Valero Refining-Texas, L.P. ("Valero"), hired Paradigm to "remanufacture and/or repair" a flow valve, identified as Flow Valve 2803 ("FV 2803"), as part of a turnaround project at its Texas City refinery.  After Valero delivered the valve to Paradigm, Paradigm subcontracted the work to SIVCO.  SIVCO then subcontracted the work to another company, Control Valve Services ("CVS").  The day after CVS performed the repair work, the valve was returned to Valero.

Valero subsequently sued Paradigm, SIVCO, and CVS, claiming that because CVS had "failed to install a vital locking pin that secures the valve's actuator stem to the valve's plug," FV 2803 caused a fire at its refinery in July 2007.  In its petition, Valero alleged that "[t]he stem-plug separation caused the plug to move in an uncontrolled manner in the line, resulting in severe hydraulic hammering.  Shaking violently, a union broke and opened, causing a release that

---

[1]  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.001 (Vernon 2011).

was ignited." In its cross-claim against SIVCO for indemnity, Paradigm alleged that SIVCO was a "manufacturer" of FV 2803 and, therefore, it had a duty to defend Paradigm as a "seller" against its losses incurred as a result of Valero's lawsuit.[2] SIVCO denied that it had an indemnity obligation to Paradigm.

Valero eventually settled with and non-suited the defendants, leaving Paradigm's statutory-indemnity claim against SIVCO as the only remaining claim. Paradigm and SIVCO then filed opposing summary-judgment motions, both of which the trial court denied. At a later hearing, Paradigm and SIVCO explained to the trial court that they had no factual disputes, asked the court to determine the legal issue of statutory indemnity, and subsequently filed amended cross-motions for summary judgment. Without stating a basis for its ruling, the trial court then granted summary judgment in favor of SIVCO on Paradigm's statutory-indemnity claim, denied Paradigm's motion, and ordered that it take nothing on its cross-claim against SIVCO.

### Summary Judgment

We review a trial court's decision to grant summary judgment de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). Although the denial of a summary-judgment motion is normally not appealable, we may review such a denial when both parties moved for summary

---

[2]   *See id.*

3

judgment and the trial court grants one motion and denies the other. *Id.* In our review of such cross-motions, we review the summary-judgment evidence presented by each party, determine all issues presented, and render the judgment that the trial court should have rendered. *Id.* (citing *Comm'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)). If we determine that a fact issue precludes summary judgment for either party, we remand the cause for trial. *See Univ. of Tex. Health Sci. Ctr. at Houston v. Big Train Carpet of El Campo, Inc*., 739 S.W.2d 792, 792 (Tex. 1987).

To prevail on a summary-judgment motion, a movant has the burden of establishing that it is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a plaintiff moves for summary judgment on its claim, it must establish its right to summary judgment by conclusively proving all the elements of its cause of action as a matter of law. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Anglo-Dutch Petroleum Int'l, Inc. v. Haskell*, 193 S.W.3d 87, 95 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co*., 690 S.W.2d 546, 548–49 (Tex. 1985). Every reasonable

4

inference must be indulged in favor of the non-movant and any doubts must be resolved in its favor. *Id*. at 549.

## Manufacturer's Duty to Indemnify

In its first and second issues, Paradigm argues that the trial court erred in granting SIVCO summary judgment and denying it summary judgment because the summary-judgment evidence establishes all the elements of Paradigm's statutory-indemnity claim as a matter of law. Specifically, Paradigm asserts that: (1) SIVCO is a product "manufacturer" as a "rebuilder" or "assembler"; (2) FV 2803, as a "product," or at least with its new component parts, was placed into the "stream of commerce"; (3) Paradigm is a product "seller"; and (4) Paradigm suffered losses from a "product liability action." In response, SIVCO asserts that: (1) it does not have a duty to indemnify Paradigm as Valero's suit was not a products liability action; (2) it does not meet the statutory definition of a "manufacturer" and did not create a product, but only serviced a product; (3) FV 2803 was not placed into the "stream of commerce," but only returned to its owner, Valero; and (4) it and Paradigm are in the "same position," if contracting to service a product makes one a "manufacturer" of the product.

With certain exceptions, a manufacturer of a product has a duty to indemnify a seller of the product against loss arising from a products liability action.[3]  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.002(a) (Vernon 2011).  Specifically,

> A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omissions, such as negligently modifying or altering the product, for which the seller is independently liable.

*Id.*  Section 82.002's indemnity obligation is imposed only on manufacturers, not on other sellers.  *See id.*  A "seller" is defined as:

> [A] person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof.

*Id.* § 82.001(3).  The Texas Legislature enacted section 82.002 to provide indemnity for all retailers of a defective product.  *See New Tex. Auto Auction Servs., L.P. v. Gomez de Hernandez*, 249 S.W.3d 400, 405 (Tex. 2008).  An entity cannot be a "seller" unless it distributes or places, for a commercial purpose, the defective product into the "stream of commerce for use or consumption," and it must be "engaged in the business" of doing so.  TEX. CIV. PRAC. & REM. CODE ANN. § 82.001(3).

---

[3]   This is a statutorily-created duty distinct from the duties owed by manufacturers under the common law.  *Owens & Minor, Inc. v. Ansell Healthcare Prods., Inc.*, 251 S.W.3d 481, 483–84 (Tex. 2008) (comparing common law duty to statutory duty); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999) ("The duty [to indemnify] is a new, distinct statutory duty. . . .").

A "manufacturer" is defined as:

[A] person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any component part thereof in the stream of commerce.

*Id.* § 82.001(4). The Texas Supreme Court has explained that a "seller" is one who "commercially distributes a product" and "manufacturer" status depends upon various acts relating to product creation. *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 449 (Tex. 2008). "[A]ll manufacturers are also sellers, but not all sellers are manufacturers." *Id.* (quoting *Gen. Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 256 (Tex. 2006)).

A "[p]roducts liability action" is defined as:

any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

TEX. CIV. PRAC. & REM. CODE ANN. § 82.001(2). A manufacturer's duty to indemnify "applies without regard to the manner in which the [products liability] action is concluded." *Id.* § 82.002(e)(1); *Owens & Minor, Inc.*, 251 S.W.3d at 484. A "loss" arising out of a products liability action includes not just liability for damages, but also court costs and reasonable attorneys' fees. TEX. CIV. PRAC. & REM. CODE ANN. § 82.002(b). And the allegations in a plaintiff's pleadings are

7

sufficient to invoke a manufacturer's duty to indemnify a seller under section 82.002. *See Gen. Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 256 (Tex. 2006); *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 91 (Tex. 2001) ("the manufacturer's duty to indemnify the seller is invoked by the plaintiff's pleadings and joinder of the seller as defendant").

Damages "allegedly caused by a defective product" are those sought from a "product unreasonably dangerous because of a defect in marketing, design, or manufacturing." *Meritor*, 44 S.W.3d at 88 (citing *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex. 1995)). Such a products liability action is "any action in which a plaintiff alleges that a defective product caused injury, regardless of the 'theory or combination of theories' underlying the plaintiff's action." *Id*. at 88, 91 (holding that products liability action includes other theories of liability properly joined thereto).

Paradigm asserts that "[t]here is no real dispute that Paradigm incurred losses arising from a 'products liability action' . . . in the form of its settlement to Valero and its attorney's fees in this case." In response, SIVCO asserts that Valero's pending claims "did not include a 'products liability' action within chapter 82; they were service based [claims] . . . preclud[ing] the statutory indemnity sought from SIVCO." SIVCO also asserts that Valero's third amended petition, its live pleading when it settled its claims with Paradigm, SIVCO, and

CVS, no longer contained claims for strict products liability and negligence.[4] And SIVCO argues that because Valero's breach-of-contract and warranty claims apply to "services," not to a "product," they do not trigger a duty by SIVCO to indemnify Paradigm.

We examine the substance of Valero's underlying claim, rather than how Valero couched the claim to determine whether it falls within the definition of section 82.001(2). The factual allegations in Valero's petition relate to the service work performed on FV 2803; Valero claimed that the "[d]efendants failed to install a vital locking pin that secures the valve's actuator stem to the valve's plug." Thus, Valero's allegations did not relate to a defect in FV 2803 based on its "marketing, design, or manufacturing." Accordingly, we conclude that Valero's petition did not state a products liability action within the meaning of section 82.001(2).

The summary-judgment evidence reveals that both Paradigm and SIVCO were in the business of repairing valves. Neither party provided summary-judgment evidence demonstrating what specific service work was performed on FV 2803. Regardless of whether FV 2803 was "rebuilt" or "repaired," in order for section 82.002 to apply, a seller had to have distributed or otherwise placed FV 2803 into the stream of commerce for use or consumption. FV 2803 was owned

---

[4]    The record reflects that SIVCO sought and obtained summary judgment on Valero's claims for strict products liability and negligence.

by Valero, Valero removed it one day for service work that was ultimately performed by CVS, and FV 2803 was returned to Valero the next day. From these facts, it cannot be reasonably concluded that Paradigm was engaged as a "seller," in the business of distributing or placing, for any commercial purpose, valves into the stream of commerce for use or consumption.[5]

Section 82.001 does not define the term "stream of commerce." Thus, in construing the definition of "seller" as used in section 82.001(3) as to whether it is ambiguous on its face, we may consider the "common law or former statutory provisions, including laws on the same or similar subjects." *See* TEX. GOV'T CODE ANN. § 311.023(4) (Vernon 2011). And we presume that the Texas Legislature acted with knowledge of the common law and court decisions when it enacted section 82.001(3). *See Phillips v. Beaber*, 995 S.W.2d 655, 658 (Tex. 1999) (citing *McBride v. Clayton*, 166 S.W.2d 125, 128 (Tex. 1942)). In *McBride*, the Texas Supreme Court relied on case law established before a statute was enacted to interpret the term "insurable interest" as used in the statute. 166 S.W.2d at 128. Here, we note that the term "stream of commerce" is a term of art "analyzed in roughly the same way by courts in all American jurisdictions." *Culton v. Saks,*

---

[5] Paradigm asserts that SIVCO did not, as per section 82.001(3), assert that Paradigm was a "seller" as a ground for summary judgment. However, Paradigm, in its own summary-judgment motion, asserted that it was a seller, and this is the crux of its argument that it is entitled to indemnity under section 82.002. If Paradigm was not a seller, it would have no basis to argue its entitlement to indemnity under section 82.002.

*Inc.*, No. H-04-3001, 2006 WL 2729408, at *2 (S.D. Tex. Sept. 25, 2006). Because sections 82.001(3) and 82.002 were enacted by the Legislature long after the meaning of the term "stream of commerce" was established by the courts, we presume that the Legislature adopted the definition of the term as used in case law.

For a product to enter into the stream of commerce, it "must be released in some manner to the consuming public." *Id.* The supreme court has recognized that a product need not be "sold" in order to enter into the stream of commerce. *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 376 (Tex. 1978). However, it must be released in some manner to the consuming public either for purchase by the public, or to facilitate the purchase of products by the public. *See Nazari v. Kohler Co.*, No. 07-50188, 2008 WL 4542850, at *3–4 (5th Cir. Oct. 13, 2008) (finding shower door displayed to consuming public "for the commercial purpose of profiting from future sales of that very product" was in stream of commerce); *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 792 (Tex. 1967) ("One who delivers an advertising sample to another with the expectation of profiting therefrom through future sales is in the same position as one who sells the product."); *Davis v. Gibson Prods., Co.*, 505 S.W.2d 682, 691 (Tex. Civ. App.— San Antonio 1973, writ ref'd n.r.e.) (holding that display products intended for sale are placed into stream of commerce). Because FV 2803 was owned by Valero and never released to the consuming public for purchase or to facilitate the purchase of

11

products, it was not released into the stream of commerce for use or consumption as required for the application of section 82.002.

As the Texas Supreme Court has explained, section 82.002 "was designed to remedy the fundamental unfairness inherent in a scheme that holds an innocent seller liable for defective products manufactured by another by requiring the manufacturer to indemnify the seller unless the seller is independently liable for negligence, intentional misconduct, or any other act or omission." *Owens & Minor*, 251 S.W.3d at 487. "To the extent [section 82.002] addresses product claims generally, it reflects a legislative intent to restrict liability for defective products to those who manufacture them." *New Tex. Auto*, 249 S.W.3d at 405 (explaining consumers normally expect product manufacturers to "stand behind" product).

Section 82.002 only requires manufacturers to indemnify innocent sellers "against loss arising out of a products liability action." Valero did not allege a defect in FV 2803's marketing, design, or manufacturing—it sued for breach-of-service contract and on the basis that the service work performed on FV 2803 was deficient, ultimately resulting in a fire at its refinery. Therefore, section 82.002 does not apply, and Paradigm is not entitled to indemnity from SIVCO. Accordingly, we hold that the trial court did not err in granting SIVCO summary judgment on the ground that Paradigm did not allege a products liability action

under section 82.002 or in denying Paradigm's summary-judgment motion. Having so held, we need not reach Paradigm's remaining issues.

## Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Keyes, and Sharp.

13