**Affirm and Opinion Filed December 21, 2018**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01050-CV

**JOHN DUBIEL, Appellant**
**V.**
**DR. PEPPER SNAPPLE GROUP, INC., ET AL, Appellees**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-04664**

## MEMORANDUM OPINION
Before Justices Stoddart, Whitehill, and Boatright
Opinion by Justice Boatright

While John Dubiel was shopping at a Tom Thumb grocery store, he removed two six-packs of Dr. Pepper bottles from the top shelf of a stand-alone display on the soft drink aisle. As he did so, he jostled another six-pack of Dr. Pepper. Several bottles from the jostled six-pack fell from the display and exploded or broke. Flying glass from the bottles injured Dubiel's eye.

Dubiel filed a lawsuit against twelve Dr. Pepper entities (Dr. Pepper Snapple Group, Inc., Dr. Pepper/Seven Up Bottling Group L.P., Dr. Pepper Bottling Company of Texas, Dr. Pepper Bottling Company, Dr. Pepper Bottling Company of Dallas, The American Bottling Company, Dr. Pepper Bottling Holdings, Inc., DPS Holding Inc., Dr. Pepper/Seven-Up Beverage Sales Company, Dr. Pepper/Seven-Up Manufacturing Company, Dr. Pepper/Seven Up, Inc., and Splash Transport, Inc., collectively Dr. Pepper), Safeway, Inc. (as parent company of Tom Thumb), Temple Bottling, Ltd., Vitro Packaging LLC, and Vitro Packaging de Mexico, S.A. de C.V. He

brought claims against all of the defendants for strict liability and negligence; he asserted a claim for breach of implied warranty of merchantability against the Vitro entities only; and he asserted a premises liability claim against Safeway. Several years later, the defendants filed a joint motion for a no evidence summary judgment on all remaining causes of action asserted by Dubiel.

The trial court granted the defendants' no evidence motion as to Dr. Pepper and Safeway, and denied the motion as to Temple and the Vitro entities. The court subsequently entered an order granting defendants' motion to sever the case against Temple and Vitro from the case against Dr. Pepper and Safeway. Dubiel appeals the trial court's order granting summary judgment as to Dr. Pepper and Safeway. We affirm.

## DISCUSSION

In three issues, Dubiel contends that the trial court erred in granting the no evidence summary judgment because there is more than a scintilla of evidence with respect to each challenged element of his claims against Dr. Pepper and Safeway. We review a grant of summary judgment de novo. *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017) (per curiam). We review the summary judgment evidence in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311–12 (Tex. 2014).

In a no evidence motion for summary judgment, the movant contends that no evidence supports one or more essential elements of a claim on which the nonmovant would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). The trial court must grant the motion unless the nonmovant raises a genuine issue of material fact on each challenged element. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). No evidence summary judgment is proper if the nonmovant fails

to bring forward "more than a scintilla of probative evidence" as to an essential element for which the movant contends no evidence exists. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009).

## A. Strict Liability

In Dubiel's strict liability claim against Dr. Pepper and Safeway, he alleged that the glass Dr. Pepper bottles "exploded" and that they were defective and unreasonably dangerous. He also alleged that Dr. Pepper and Safeway designed, manufactured, and/or supplied the defective bottles. In Texas, the seller of a defective product is subject to strict liability for damages caused by the product. *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 446 (Tex. 2008). The doctrine of strict liability applies to any person engaged in the business of selling products for use or consumption. *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 375 (Tex. 1978). It is not necessary that the defendant actually sell the product, but only that he be engaged in the business of introducing the product into channels of commerce. *Id*. However, the product must reach the user in essentially the same condition as when it left the seller's possession. *Id*.

Under this theory, Dubiel was required to prove that: (1) Dr. Pepper and Safeway introduced the product into the stream of commerce; (2) the product was in a defective or unreasonably dangerous condition; and (3) there was a causal connection between the defective or unreasonably dangerous condition and Dubiel's injuries or damages. *Id*. In their no evidence motion, Dr. Pepper and Safeway challenged the second and third elements of Dubiel's claim. On appeal, Dubiel argues that there is clearly more than a scintilla of evidence supporting both of these elements.

Dubiel asserts that a product may be unreasonably dangerous because of a defect in marketing, design, or manufacturing. However, he does not support his assertion with evidence of a defect in the marketing, design, or manufacturing of the Dr. Pepper bottles that broke. Instead, he argues that his deposition testimony that the bottles exploded is sufficient circumstantial

evidence that the bottles were defective and unreasonably dangerous. Citing *Franks v. National Dairy Prods. Corp.*, 282 F.Supp. 528, 531 (W.D. Tex. 1968), he contends that this is an "exploding bottle" case and as such, "where an explosion is involved . . . the defect is so obvious as to warrant little or no discussion." We note, however, that in *Franks*, the court clarified that it was referring to an explosion of a product that did not ordinarily explode when properly used. *Id*. Generally, "exploding bottle" cases involve factual scenarios in which the bottle exploded while being properly used and without some extraneous harmful force. *See, e.g.*, *Pittsburg Coca-Cola Bottling Works v. Ponder*, 443 S.W.2d 546, 549 (Tex. 1969) (bottle exploded while being carried from storeroom to cooler); *Hankins v. Coca-Cola Bottling Co.*, 249 S.W.2d 1008, 1008 (Tex. 1952) (plaintiff was carrying a carton of Coca-Cola from his car to his house when a bottle inside the carton exploded). However, to prevail on a strict liability claim—even in an "exploding bottle" case—a plaintiff must negate the possibility of an intermediate actor and prove that the bottle underwent no change since delivery. *Royal Crown Bottling Co. v. Ward*, 520 S.W.2d 797, 800 (Tex. App.—Beaumont 1975, no writ).

Dr. Pepper and Safeway contend there is no evidence that the bottles exploded. Instead, they assert that the evidence establishes that in removing two six-packs of Dr. Pepper bottles from the display, Dubiel jostled another six-pack of bottles, causing three or four bottles to fall from the display to the floor. They insist that the bottles did not explode, they broke. The only evidence that the bottles "exploded" is Dubiel's deposition testimony that he saw "exploding glass and dark liquid and foam." He also stated that the bottles "exploded" when they hit the ground and the glass flew up. Dubiel has not come forward with any evidence that the bottles would have exploded, or broken, if they had not been knocked off the display.

Dubiel suggests that we apply the principles in *Waller v. Coca Cola Bottlers Ass'n*, 523 S.W.2d 306 (Tex. App.—Houston [1st Dist.] 1975, no writ) to reasonably infer that his testimony

that the bottles exploded is sufficient evidence that the bottles were defective. In *Waller*, a grocery shopper was injured by glass shards from broken bottles. Waller lifted a six-pack carton of Sprite from a store display but before she could place the carton into her shopping basket, the bottom of the carton fell out and bottles fell to the floor and broke, lacerating her leg. *Id*. at 308. The court noted that in order to sustain her burden, Waller was required to prove that she made ordinary and reasonable use of the carton, in a manner anticipated by the grocery store, and that she was injured as a result of an identifiable defect in the carton. *Id*. Waller testified that she was not aware that anything was wrong with the carton until the bottles fell from it. She could not testify as to any specific defect, but the court determined that it was not her burden to establish the specific nature of the deficiency in the bottom of the carton that caused it to come apart. *Id*. It was sufficient that she proved by the circumstances that the bottom of the carton was so defective that it would not support the weight of the bottles under ordinary use. *Id*.

Dubiel suggests that—like Waller—he does not have the burden to establish the specific nature of the defect that caused the bottles to explode. He argues that it is sufficient that he prove by the circumstances that the bottles were so defective that they exploded when they fell from the display. However, the facts in this case are distinguishable from *Waller*. The salient distinction is that in *Waller*, it was the carton that was held to be defective, and not the bottles that broke upon falling. In addition, Waller established that she made ordinary and reasonable use of the carton in a manner anticipated by the seller. Here, there is no evidence of Dubiel's ordinary and reasonable use. Instead, the evidence suggests that Dubiel caused the bottles to fall to the floor and break. Thus, circumstantial evidence in this case does not support an inference that the bottles were defective.

"Texas law does not generally recognize a product failure or malfunction, standing alone, as sufficient proof of a product defect." *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 42 (Tex.

2007). Instead, a specific defect must be identified by competent evidence and other possible causes must be ruled out. *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 137 (Tex. 2004). Here, there is no evidence as to when the bottles were delivered and when the stand-alone display was stocked. We find no evidence that the bottles had undergone no change since delivery or negating the possibility of an intermediate actor. We find no evidence that Dubiel handled the bottles with ordinary and reasonable care. Because Dubiel has failed to bring forward more than a scintilla of probative evidence as to the essential element that the bottles were in a defective and unreasonably dangerous condition, the trial court did not err in granting appellees' no evidence summary judgment on Dubiel's strict liability cause of action against Dr. Pepper and Safeway. We overrule Dubiel's first issue.

## B. Negligence

In his Second Amended Petition, Dubiel alleged that both Dr. Pepper and Safeway were negligent because they knew or should have known that their actions or inactions could lead to exploding bottles which would cause injury. Dubiel does not appeal the trial court's order granting summary judgment to Safeway on Dubiel's negligence claim. Instead, his second issue and argument pertain solely to his negligence claim against Dr. Pepper.

Dubiel asserts that Dr. Pepper breached its duty to exercise ordinary care in the design, manufacturing, and marketing of the bottles. To prevail on his negligence claim, Dubiel must establish: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately caused by the breach. *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017). In the no evidence motion, Dr. Pepper challenged the second and third elements, arguing that there is no evidence of a breach of legal duty to Dubiel or damages proximately caused by such a breach.

Dubiel asserts that Dr. Pepper breached its duty of ordinary care by specifying glass bottles for its carbonated beverage but failing to check the amount of burst pressure in the bottles when it

picked them up from the bottler to place in the grocery store. In support of his assertion, Dubiel cites to the deposition testimony of Vito Biundo, Dr. Pepper's corporate representative for document retention issues. However, the record does not support Dubiel's assertion. When asked who would have information about the carbonated pressure in the bottles at the time of delivery, Biundo testified that Temple, the filler of the bottles, would have that information. Biundo did not testify that Dr. Pepper had a duty to check the pressure when it picked up the bottles from Temple. In fact, Biundo expressly stated that it was the responsibility of the bottler to monitor the carbonation in the bottles it filled. Dubiel does not direct us to any evidence in the record that suggests that Dr. Pepper breached a duty by not checking the pressure in the bottles. Furthermore, there is no evidence that excessive pressure in the bottles caused them to break.

Dubiel also contends that Dr. Pepper breached its duty of ordinary care in designing the top shelf of its stand-alone display. He asserts that Dr. Pepper designed a display that would cause the bottles to fall from a height if they were jostled. The record contains evidence that the stand-alone display was waist height with three or four shelves. However, there is no evidence that the display collapsed or tipped, or that top shelf of the display malfunctioned. Dubiel testified that when he removed two six-packs of Dr. Pepper bottles from the top shelf of the display, he jostled another six-pack of Dr. Pepper bottles and three or four bottles fell to the floor. There is no evidence that the top shelf of the display caused the bottles to fall from the display falling to the floor. And Dubiel has not come forward with more than a scintilla of evidence that the top shelf of the display was not designed properly.

Dubiel also argues that Dr. Pepper breached its duty of ordinary care by not placing warnings on its packaging. He does not specify whether the warnings should have been placed on the bottles, the six-pack packaging, the stand-alone display, or all three. A defendant's failure to warn of a product's potential dangers when warnings are required is a type of marketing defect.

*Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex. 1995). Liability will attach if the lack of adequate warnings or instructions renders an otherwise adequate product unreasonably dangerous. *Id*. The law of products liability does not require a manufacturer or distributor to warn of obvious risks. *Id*. Nor is there a duty to warn when the risks associated with a particular product are matters "within the ordinary knowledge common to the community." *Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385, 388 (Tex. 1991).

Dubiel argues that Dr. Pepper should have warned that its pressurized glass bottles should not be stacked or positioned in a way that could subject them to falling. He also argues that Dr. Pepper should have warned that its bottles should be handled with care because excessive burst pressure might cause them to explode. But the warnings Dubiel seeks are not in line with the facts in this case. According to the evidence, the glass bottles broke because Dubiel knocked them off the shelf and they fell to the floor. There is no evidence that the bottles were stacked improperly, and there is no evidence that the bottles exploded because of excessive burst pressure. It is an obvious risk, within ordinary knowledge, that if glass bottles are dropped on the floor, they may break. Dr. Pepper did not have a duty to warn of this potential hazard.

Dubiel has not come forward with more than a scintilla of evidence that Dr. Pepper breached a legal duty—an essential element of Dubiel's negligence cause of action. We conclude the trial court did not err in granting summary judgment in favor of Dr. Pepper on Dubiel's negligence claim. We overrule Dubiel's second issue.

## C. Premises Liability

In his third issue, Dubiel contends that the trial court erred in granting the no evidence summary judgment because Safeway had constructive knowledge of a dangerous condition on its premises and breached its duty of care by failing to either adequately warn him, or make the condition safe. Dubiel contends that the dangerous condition was the stand-alone display of Dr.

Pepper bottles.[1] He describes the display as being tall, having three or four shelves on which glass bottles were precariously perched on top of glass bottles, and then on top of cans. He urges that Safeway had a duty to either warn its customers not to jostle any of the bottles or to remove the bottles from the display. Because Safeway failed to do either of these things, he argues that Safeway breached its duty of care, and this breach proximately caused his injury.

Safeway owed Dubiel, an invitee on the Tom Thumb premises, a duty to exercise reasonable care to protect him from any unreasonably dangerous condition of which it had actual or constructive knowledge. *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 407 (Tex. 2006). The four elements of a premises liability cause of action are: (1) the owner had actual or constructive knowledge of some condition on the premises; (2) the condition posed an unreasonable risk of harm; (3) the owner did not exercise reasonable care to reduce or eliminate the risk of harm; and (4) the owner's failure to use such care proximately caused the plaintiff's injuries. *Smith v. Mohawk Mills, Inc.*, 260 S.W.3d 672, 674 (Tex. App.—Dallas 2008, no pet.). In the no evidence motion, Safeway asserted that Dubiel has no evidence of any of the elements.

We first consider whether Safeway had actual or constructive knowledge of some condition on the premises of the Tom Thumb store that posed an unreasonable risk of harm to Dubiel. There is no one test for determining actual knowledge that a condition presents an unreasonable risk of harm. *Id*. at 675. However, courts generally consider whether the premises owner has received reports of the danger created by the condition or reports of prior injuries. *Id*. Dubiel did not produce evidence that the display had ever collapsed, tipped over, or failed, or that Safeway had received reports of any injuries involving the display in the Tom Thumb store where Dubiel was injured, or in any other Tom Thumb grocery store. The Tom Thumb incident report for Dubiel's injury stated:

---

[1] In his first issue, Dubiel argues that the hazardous condition was the ready-to-explode bottles of Dr. Pepper—not the stand-alone display.

"customer knocked over a display and the glass from the product got into his eye." However, there was nothing in the report to indicate that the display itself had caused or contributed to the incident, or was a dangerous condition. In *H.E. Butt Grocery Company v. Resendez*, 988 S.W.2d 218, 219 (Tex. 1999), the Texas Supreme Court held that the mere fact that a store has customer-sampling display could not, without more, be evidence of a condition on the premises that posed an unreasonable risk of harm. We think that a stand-alone display of soft drinks, like the customer-sampling display in *Resendez*, is not evidence of a condition on the premises that poses unreasonable risk of harm.

Safeway denies that it had actual knowledge of an unreasonably dangerous condition on its premises. Safeway also contends the evidence does not support the description of the stand-alone display set forth in Dubiel's appellate brief. According to evidence—Dubiel's deposition testimony—the display was not tall. He testified that the six-packs of bottles on the top shelf of the display were about stomach or waist height. There is no evidence that the bottles were precariously stacked, or perched at a precarious height. Dubiel does not direct us to other evidence of Safeway's actual knowledge that the display was a dangerous condition that posed an unreasonable risk of harm.

Dubiel argues that because the dangerous condition existed for some time prior to the bottles exploding, Safeway had, at a minimum, constructive knowledge of it. Dubiel's evidence of Safeway's constructive knowledge consists of his deposition testimony that he had seen the stand-alone display of Dr. Pepper bottles and cans in the soft drink aisle at the Tom Thumb store both before and after the date on which he was injured. However, no evidence in the record indicates that Safeway knew of the alleged risk.

In *Zook v. Brookshire Grocery Company*, 302 S.W.3d 452 (Tex. App.—Dallas 2009, no pet.), we held that, although proof that the premises owner created a condition that posed an

–10–

unreasonable risk of harm may constitute circumstantial evidence of knowledge, evidence of the owner's knowledge or appreciation of the dangerous condition must be established. *Id*. at 456. Thus, in some cases, proof that the premises owner created the condition may constitute circumstantial evidence of knowledge. However, in this case, Dubiel does not accuse Safeway of creating the dangerous condition. In his appellate brief, Dubiel states that Dr. Pepper—not Safeway or Tom Thumb—created and stocked the stand-alone display. Dubiel does not point to any evidence that that Safeway knew that there was a problem with the display, that the display could fail, or that the display was a dangerous condition that posed an unreasonable risk of harm.

There is no evidence that Safeway had actual or constructive knowledge that the stand-alone display of Dr. Pepper in its Tom Thumb store was a dangerous condition that posed an unreasonable risk of harm. Therefore, Dubiel did not produce more than a scintilla of probative evidence to raise a genuine issue of material fact with respect to an essential element of his premises liability claim against Safeway. We conclude the trial court did not err in granting summary judgment for Safeway. We overrule Dubiel's third issue.

## CONCLUSION

Having overruled all of Dubiel's issues, we affirm the trial court's judgment.


/Jason Boatright/
JASON BOATRIGHT
JUSTICE

171050F.P05

–11–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOHN DUBIEL, Appellant

No. 05-17-01050-CV      V.

DR. PEPPER SNAPPLE GROUP, INC.,
ET AL, Appellees

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-13-04664.
Opinion delivered by Justice Boatright.
Justices Stoddart and Whitehill
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees DR. PEPPER SNAPPLE GROUP, INC., ET AL recover
their costs of this appeal from appellant JOHN DUBIEL.

Judgment entered December 21, 2018